*Kassir v. United States*

# In the
# United States Court of Appeals
## For the Second Circuit

---

August Term, 2020
No. 19-1477

OUSSAMA KASSIR,
*Petitioner-Appellant*,

*v.*

UNITED STATES OF AMERICA,
*Respondent-Appellee*,

---

Appeal from the United States District Court for the
Southern District of New York
Nos. 19-cv-2424 and 04-cr-0356 —Analisa Torres, *Judge*.

---

ARGUED: MARCH 24, 2021
DECIDED: JULY 9, 2021

---

Before: JACOBS and NARDINI, *Circuit Judges*.[1]

---

Petitioner-Appellant Oussama Kassir appeals from a judgment entered on May 15, 2019, in the United States District Court for the Southern District of New York (Analisa Torres, *J.*), denying his motion for relief pursuant to 28 U.S.C. § 2255.

---

[1] Senior Circuit Judge Robert A Katzmann, originally a member of this panel, passed away on June 9, 2021. The two remaining members of the panel, who are in agreement, have determined to issue this opinion. *See* 2d Cir. IOP E(b).

Kassir, who is currently serving numerous concurrent sentences, including two life terms in prison, challenges only one of his convictions under *Sessions v. Dimaya*, 138 S. Ct. 1204 (2018). We hold that the discretionary concurrent sentence doctrine continues to apply when a defendant collaterally attacks one of his convictions, and we exercise our discretion to decline review in this case. No matter the outcome of his claim, Kassir will remain in prison for the rest of his life on other counts of conviction, and a favorable decision would not shorten the amount of time he will spend incarcerated. We therefore **AFFIRM** the district court's judgment without prejudice to Kassir renewing the claim if the validity of his life sentences changes in the future.

---

DANIEL M. PEREZ, Law Offices of Daniel M. Perez, Newton, NJ, *for Petitioner-Appellant.*

DAVID J. ROBLES, Assistant United States Attorney (Thomas McKay, Assistant United States Attorney, *on the brief*), *for* Audrey Strauss, United States Attorney for the Southern District of New York, New York, NY, *for Respondent-Appellee.*

---

WILLIAM J. NARDINI, *Circuit Judge*:

Petitioner-Appellant Oussama Kassir appeals from a judgment entered on May 15, 2019, in the United States District Court for the Southern District of New York (Torres, *J.*), denying his motion for relief pursuant to 28 U.S.C. § 2255. Kassir is currently serving multiple sentences, including two terms of life in prison, for various terrorism-related crimes. Kassir now argues that one of his convictions—for distributing information related to explosives, destructive devices, and weapons of mass destruction in violation of 18 U.S.C. § 842(p)(2)(A), which led to

2

a 20-year prison term—should be vacated under the Supreme Court's 2018 decision in *Sessions v. Dimaya*.[2]

We hold that the discretionary concurrent sentence doctrine applies when a defendant collaterally attacks one of his convictions. In light of the facts of this case, we exercise our discretion to decline review of Kassir's claim. Even if his challenge were successful, our decision would not shorten the time Kassir must remain in custody because he remains subject to two concurrent life sentences.

Accordingly, we **AFFIRM** the district court's judgment without prejudice to Kassir renewing the claim if the validity of his concurrent life sentences changes in the future.

## I. BACKGROUND

### A. Kassir's Convictions and Sentencing

On May 12, 2009, Kassir was found guilty by a jury in the Southern District of New York of various counts of (1) providing and concealing material support and resources to terrorists, 18 U.S.C. §§ 2339A, 2339B (Counts 4, 6, 9, and 11); (2) conspiring to provide and conceal material support and resources to terrorists, 18 U.S.C. §§ 371, 2339A, 2339B (Counts 3, 5, 8, and 10); (3) conspiring to kill, kidnap,

---

[2] 138 S. Ct. 1204 (2018).

maim, and injure persons in a foreign country, 18 U.S.C. § 956 (Counts 7 and 12);

and—most relevant for the present controversy—(4) distributing information

relating to explosives, destructive devices, and weapons of mass destruction, 18

U.S.C. § 842(p)(2)(A) (Count 13). A few months later, on September 14, 2009, the

district court (John F. Keenan, *J.*) sentenced Kassir to two terms of life

imprisonment for conspiring to kill, kidnap, maim, and injure persons (Counts 7

and 12), 20 years of imprisonment for distributing information relating to

explosives (Count 13), and various other terms of imprisonment, with all terms to

run concurrently.[3] This Court upheld Kassir's convictions on direct appeal,[4] and

Kassir is serving his sentences.

## B.    The Vagueness Cases and Kassir's Motion Under § 2255

On June 26, 2015, in *Johnson v. United States*, the Supreme Court invalidated

the residual clause of the Armed Career Criminal Act, 18 U.S.C. § 924(e)(2)(B)(ii),

---

[3] Kassir was also sentenced to two 10-year terms and two 15-year terms of imprisonment for his substantive counts of providing and concealing material support to terrorists (Counts 4, 6, 9, and 11); two 15-year terms, one 10-year term, and one five-year term of imprisonment for conspiring to do the same (Counts 3, 5, 8, and 10); and a 5-year term of supervised release.

[4] *See United States v. Mustafa*, 406 F. App'x 526 (2d Cir. 2011).

4

ruling that its definition of a "violent felony" was unconstitutionally vague.[5]  A year later, the Supreme Court held that *Johnson* announced a new substantive rule of constitutional law that applied retroactively on collateral review.[6]

On April 17, 2018, the Supreme Court decided *Sessions v. Dimaya*, holding that the similarly worded residual clause of 18 U.S.C. § 16(b), the federal criminal code's definition of "crime of violence," was also impermissibly vague.[7]  The Court called the decision a "straightforward application" of *Johnson*.[8]  By the next year, the Supreme Court issued another void-for-vagueness decision, *United States v. Davis*, in which the Court struck the residual clause of 18 U.S.C. § 924(c)—another similarly worded definition of "crime of violence"—as unconstitutional.[9]

On March 18, 2019, Kassir, who was *pro se* at the time, filed a motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255.  He argued

---

[5] 576 U.S. 591, 597 (2015).

[6] *See Welch v. United States*, 136 S. Ct. 1257 (2016).

[7] 138 S. Ct. 1204, 1210 (2018).

[8] *Id*. at 1213.

[9] 139 S. Ct. 2319, 2324 (2019).

that under *Johnson* and *Dimaya*, his conviction under 18 U.S.C. § 842(p)(2)(A) was invalid because it was not premised on a qualifying "crime of violence."[10]

## C.     The District Court's Decision

On April 26, 2019, the district court denied Kassir's § 2255 motion as untimely. The court found that "although the Supreme Court decided *Dimaya* on April 17, 2018 (or within one year of when [Kassir] filed [his] motion), it has never held that *Dimaya* announced a substantive rule that applies retroactively on collateral review." J. App'x 122. Because *Dimaya* did not reset the clock for Kassir to file a § 2255 motion, the district court held that his one-year window for doing so closed on April 19, 2012—that is, one year after his time expired for filing a certiorari petition on direct review.[11] Thus, the district could not consider Kassir's *Dimaya*-based § 2255 claim.

---

[10] Under § 842(p)(2), "[i]t shall be unlawful for any person to teach or demonstrate the making or use of an explosive . . . or to distribute . . . information pertaining to . . . the manufacture or use of an explosive . . . with the intent that the . . . information be used for, or in furtherance of, an activity that constitutes a Federal *crime of violence*." 18 U.S.C. § 842(p) (emphasis added). Section 842(p) incorporates the definition of "crime of violence" set forth in § 16(b), *see Leocal v. Ashcroft*, 543 U.S. 1, 7 n.4 (2004), which, as explained above, was partially invalidated under *Dimaya*.

Kassir's *pro se* motion also raised several other challenges to his convictions, none of which is colorable, and all of which Kassir acknowledges are outside the scope of this appeal.

[11] *See Clay v. United States*, 537 U.S. 522, 527 (2003) ("Finality attaches when this Court affirms a conviction on the merits on direct review or denies a petition for a writ of certiorari, or when the time for filing a certiorari petition expires.").

The district court declined to issue a certificate of appealability. On October 22, 2019, however, this Court granted Kassir's motion for a certificate of appealability on the following issues: (1) whether Kassir's motion is not time-barred because *Dimaya* or *Davis* established a new rule of constitutional law, made retroactive to cases on collateral review, applicable to his case, and (2) if so, whether Kassir's conviction under 18 U.S.C. § 842(p)(2)(A) was predicated on a "crime of violence" pursuant to 18 U.S.C. § 16(b).

## II.    Discussion

On appeal, Kassir argues that his petition is timely, and that his § 842(p) conviction must be vacated under *Dimaya*. The Government does not dispute the petition's timeliness; nor does it argue that Kassir procedurally defaulted his challenge to the § 842(p) conviction; nor does it address Kassir's substantive challenge to his § 842(p) conviction. Instead, the Government contends that Kassir's claim is not cognizable under § 2255, because Kassir is not challenging his two concurrent life sentences and therefore is not "claiming the right to be released" from custody, as is required by the text of the statute.[12]

---

[12] *See* 28 U.S.C. § 2255(a).

7

We review *de novo* a district court's denial of a § 2255 motion.[13]  As an initial

matter, we decline to reach the question of whether Kassir's motion must be

dismissed on timeliness grounds, as the district court did, because the one-year

filing deadline for a § 2255 motion is not a jurisdictional prerequisite to our review

of the district court's judgment,[14] and the Government has expressly abandoned

any challenge to the motion's timeliness on appeal.  We also express no view on

the Government's principal argument—that Kassir's claim is not cognizable under

§ 2255—because regardless of its merit, we exercise our discretion not to review

Kassir's collateral attack on only one of his convictions under the concurrent

sentence doctrine.  Even if Kassir's 18 U.S.C. § 842(p) conviction were vacated,

Kassir will remain imprisoned on his other convictions, serving at minimum two

life sentences imposed for conspiring to kill people.  Since a favorable decision on

Kassir's claim would not shorten the amount of time he will spend incarcerated,

we decline to review the merits of his challenge at this juncture.

---

[13] *McCloud v. United States*, 987 F.3d 261, 264 (2d Cir. 2021).

[14] *See Green v. United States*, 260 F.3d 78, 82 (2d Cir. 2001) (holding that the one-year filing requirement in § 2255(f) is a statute of limitations, not a jurisdictional bar).

## A.      The Current State of the Concurrent Sentence Doctrine

The concurrent sentence doctrine is "a rule of judicial convenience."[15]  As originally formulated with respect to direct appeals, it "allows courts, in their discretion, to avoid reaching the merits of a claim altogether in the presence of identical concurrent sentences"[16] since "a ruling in the defendant's favor would not reduce the time he is required to serve or otherwise prejudice him in any way."[17]  In this context, it has been said that the court must "foresee[] *with reasonable certainty* that the defendant will suffer no adverse collateral consequences" from the court's decision to leave his conviction and sentence unreviewed.[18]  Ultimately, the doctrine is premised on the same principle underlying the doctrine of harmless error—that is, "to help promote the overall

---

[15] *Benton v. Maryland*, 395 U.S. 784, 791 (1969).  The doctrine is also a "discretionary," judicially created tool, *see Dhinsa v. Krueger*, 917 F.3d 70, 76 (2d Cir. 2019), meaning that the Court can invoke it even when, as here, the Government waived it by raising the issue in a mere footnote in its brief.

[16] *Tavarez v. Larkin*, 814 F.3d 644, 649 (2d Cir. 2016).

[17] *Oslund v. United States*, 944 F.3d 743, 746 (8th Cir. 2019) (internal quotation marks and citations omitted).

[18] *United States v. Charles*, 932 F.3d 153, 155 (4th Cir. 2019) (emphasis in original); *see also United States v. Vargas*, 615 F.2d 952, 959-60 (2d Cir. 1980) (on direct appeal from a conviction, outlining a five-factor test for deciding whether to apply the concurrent sentence doctrine).

9

functioning of our justice system, courts should conserve judicial resources by cleansing the judicial process of prejudicial error without becoming mired in harmless error."[19]

The scope of the concurrent sentence doctrine was limited, with respect to direct appeals of federal criminal convictions, by the Supreme Court's 1987 decision in *Ray v. United States*.[20] There, a defendant sentenced to three concurrent 7-year prison terms challenged each of his three separate convictions on direct appeal.[21] The appellate court, after affirming two of the convictions, declined to review the last conviction under the concurrent sentence doctrine.[22] The Supreme Court vacated the judgment, finding that the defendant was "not in fact serving concurrent sentences."[23] Citing the special monetary assessment imposed on each count—an additional penalty that, at the time, had only recently begun to be levied

---

[19] *Charles*, 932 F.3d at 158 (internal quotation marks, ellipsis, alteration, and citation omitted); *see also Benton*, 395 U.S. at 799 (White, *J.*, concurring) (describing the concurrent sentence doctrine as "not a rule of convenience to the judge, but rather of fairness to other litigants").

[20] 481 U.S. 736 (1987).

[21] *See id.* at 736.

[22] *See id.* at 736–37.

[23] *Id.* at 737.

on all criminal convictions under the Comprehensive Crime Control Act of 1984[24]—the Supreme Court reasoned that the defendant's "liability to pay th[e] total [assessment] depend[ed] on the validity of each of his three convictions."[25] Because every conviction carries its own special assessment, *Ray* effectively recognized that the concurrent sentence doctrine had become moribund on direct appeal of federal criminal convictions.[26]

In the wake of *Ray*, we have recognized that the concurrent sentence doctrine has some continued vitality, though to a more limited degree.[27] We have continued to regularly apply the principle in direct appeals where a defendant challenges only the length of one concurrent sentence, rather than the legality of a conviction underlying that sentence. Our decisions in this respect have generally been framed in terms of harmless-error review, explaining that any error in one of

---

[24] The special assessment statute, 18 U.S.C. § 3013, was originally part of the Victims of Crime Assistance Act of 1984, S. 2423, 98th Cong., 2d Sess. (1984), which was later signed into law as part of the Comprehensive Crime Control Act of 1984, Pub. L. No. 98-473, 98 Stat. 1976 (1984).

[25] *Ray*, 481 U.S. at 737.

[26] *See Dhinsa*, 917 F.3d at 76 n.4.

[27] *See Tavarez*, 814 F.3d at 649 (noting "the Supreme Court's continued acceptance, in however limited a form, of the concurrent sentence doctrine, which allows courts, in their discretion, to avoid reaching the merits of a claim altogether in the presence of identical concurrent sentences").

the lesser or equal sentences is harmless and does not affect substantial rights, where at least one of the greater or equal sentences remains intact.[28] We have done so where the defendant preserved the issue in the district court (and thus we disregard the error if it "does not affect substantial rights" under Rule 52(a) of the Federal Rules of Criminal Procedure).[29] And we have done the same where the defendant forfeited the claim in the district court (leading to review under Rule 52(b), which requires the defendant to show that the error did affect his substantial rights under the third prong of plain-error review).[30] This is consistent with the

---

[28] *See, e.g.*, *United States v. Outen*, 286 F.3d 622, 640 (2d Cir. 2002) ("[A]n erroneous sentence on one count of a multiple-count conviction does not affect substantial rights where the total term of imprisonment remains unaffected."); *United States v. Rivera*, 282 F.3d 74, 77–78 (2d Cir. 2000) ("Because Cook could properly be sentenced to life imprisonment on the [continuing criminal enterprise] count, a concurrent sentence on other counts is irrelevant to the time he will serve in prison, and we can think of no collateral consequences from such erroneous concurrent sentences that would justify vacating them."); *cf. Morales v. United States*, 635 F.3d 39, 45 (2d Cir. 2011) (noting, in context of ineffective-assistance-of-counsel claim brought under § 2255, that defendant could not have been prejudiced by counsel's failure to challenge one life sentence, where defendant faced five other life sentences).

[29] *See Rivera*, 282 F.3d at 77–78 (applying harmless error review); *see also United States v. Jackson*, 658 F.3d 145, 153 (2d Cir. 2011) (reviewing for harmless error and holding that "[a]ny error" in imposition of 384-month drug sentence was harmless in light of 540-month concurrent sentence for murder).

[30] *See Outen*, 286 F.3d at 639; *see also United States v. Samas*, 561 F.3d 108, 111 (2d Cir. 2009) ("Even if the district court erroneously imposed sentences of 151 months on Counts Two, Three, and Five, Samas cannot show (as he must for plain error review) that the error affected his substantial rights, because those sentences are to run concurrently with the mandatory minimum sentence of 240 months on Count Four.").

12

more general principle that a sentencing error is not prejudicial where, in the absence of the error, the defendant would have received the same aggregate term of imprisonment on multiple counts.[31] Our sister circuits have reached similar conclusions.[32]

Although we have not had occasion to decide the question ourselves,[33] our sister Circuits have (post-*Ray*) applied the concurrent sentence doctrine in the collateral attack context. Many courts of appeals have not hesitated to rely on the doctrine in situations where a defendant collaterally attacks his sentence. In *Oslund v. United States*, for example, the Eighth Circuit found "no error" in the

---

[31] *See, e.g.*, *United States v. Blount*, 291 F.3d 201, 214 (2d Cir. 2002) (finding sentencing error on individual counts was harmless, where "[t]he correct aggregate sentence would thus have been a prison term identical to the sentence that was in fact imposed"); *United States v. McLean*, 287 F.3d 127, 137 (2d Cir. 2002) (declining to vacate any portion of 63-month sentences on four concurrent counts of conviction, which each exceeded the 60-month statutory maximum in light of *Apprendi v. New Jersey*, 530 U.S. 466 (2000), because even absent the error, the defendant would have received the same aggregate term of imprisonment).

[32] *See, e.g.*, *United States v. Bradley*, 644 F.3d 1213, 1293–94 (11th Cir. 2011) (declining to review challenges to the district court's sentencing guidelines range calculations with regard to two counts because each of those sentences was to run concurrently with a longer sentence on another count, which the court had already upheld); *United States v. Ellis*, 326 F.3d 593, 600 (4th Cir. 2003) (declining to vacate erroneous sentence because the error did not affect the defendant's length of imprisonment); *United States v. Burns*, 298 F.3d 523, 544–45 (6th Cir. 2002) (finding sentencing error harmless because it did not add any length to the defendants' "overall terms of imprisonment").

[33] Our Court expressly left the question open only two years ago. *See Dhinsa*, 917 F.3d at 76 n.4.

district court's decision to decline review of a defendant's 20-year sentence given that he was also serving two unchallenged life sentences.[34] The Eighth Circuit reasoned that the defendant would "remain in prison for life" regardless of his motion's success, and therefore review was unnecessary.[35] The Fourth Circuit recently reached a similar conclusion in *United States v. Charles*, holding that a district court did not abuse its discretion by applying the concurrent sentence doctrine in a § 2255 proceeding.[36] There, the district court declined to review an alleged error in the defendant's 360-month gun sentence where he still faced a concurrent sentence of equal length for a drug conspiracy.[37]

The Seventh Circuit went a step further in *Ryan v. United States*, relying on the concurrent sentence doctrine to pretermit a collateral attack on one of the petitioner's several mail-fraud convictions.[38] The court reasoned that "[a]n attempt to decide on collateral review whether *each* of the seven mail-fraud

---

[34] 944 F.3d at 746.

[35] *Id.*

[36] *See Charles*, 932 F.3d at 162.

[37] *See id.* at 155.

[38] *Ryan v. United States*, 688 F.3d 845, 848–49 (7th Cir. 2012).

convictions was valid would smack of an advisory opinion" since the petitioner would still be in prison on concurrent sentences for other offenses, and because he had otherwise failed to identify any collateral consequences flowing from the challenged conviction.[39]

**B.    Analysis**

As noted above, our Court has yet to decide whether the discretionary concurrent sentence doctrine remains available in the context of a defendant's collateral attack on a conviction.[40]   Today, we answer that question in the affirmative.  We choose to rely on it here in light of the circumstances of this case. No matter our decision on Kassir's § 2255 challenge to his 18 U.S.C. § 842(p) conviction, Kassir will remain in prison on at least two unchallenged life sentences imposed for conspiring to kill people.  No matter the success of his argument, we cannot shorten the time he will remain in prison.  We therefore decline to reach the merits of his claim at this time.

Our conclusion rests on the fact that harmless-error analysis, of which the discretionary concurrent sentence doctrine is a species, applies not only on direct

---

[39] *Id*. at 849.

[40] *See Dhinsa*, 917 F.3d at 76 n.4.

appeal, but also on collateral review.[41] Our Court has long reserved § 2255 relief

for prejudicial errors that are so grave, they "result[] in a complete miscarriage of

justice."[42] While there has been considerable debate about the exact contours of

harmless-error analysis in the collateral context—specifically, "how convinced,"

on collateral review, "a reviewing court must be before it can declare a federal

constitutional error harmless" [43] —the general proposition is firm. Without

prejudicial error, there is no basis for collateral relief.

Reliance on the discretionary concurrent sentence doctrine in a collateral

context serves all the same interests advanced by applications of the harmless-

---

[41] *See Santana-Madera v. United States*, 260 F.3d 133, 140 (2d Cir. 2001) (holding that harmless-error review applies to claims of constitutional error under § 2255).

[42] *Nnebe v. United States*, 534 F.3d 87, 90 (2d Cir. 2008) (quoting *Hill v. United States*, 368 U.S. 424, 428 (1962)); *see also Peck v. United States*, 106 F.3d 450, 453–456 (2d Cir. 1997) (outlining harmless error jurisprudence in the context of a § 2255 proceeding).

[43] *Peck*, 106 F.3d at 454. There are two harmless error standards that could be applied in this context. The first is the standard for direct appeals stated in *Chapman v. California*, which requires the Government "to prove beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." 386 U.S. 18, 24 (1967). The other is the *Brecht v. Abrahamson* standard, which holds an error harmless unless "it had substantial and injurious effect or influence in determining the jury's verdict." 507 U.S. 619, 631 (1993) (internal quotation marks omitted). While the Supreme Court has held that the *Brecht* standard applies in a 28 U.S.C. § 2254 proceeding (habeas review of state court convictions), *see, e.g., Fry v. Pliler*, 551 U.S. 112, 121–22 (2007); *see also Wood v. Ercole*, 644 F.3d 83, 93–94 (2d Cir. 2011) (recognizing *Fry*), neither it nor we have decided which standard applies in a § 2255 proceeding, *see Santana-Madera*, 260 F.3d at 140 (declining to decide the issue). We need not wade into the delicacies of this debate today; Kassir's alleged *Dimaya*-based error is clearly harmless under either standard.

error rule. We avoid unnecessary adjudication of issues and unnecessary pronouncements of law.[44] And we "promote[] public respect for the criminal process by focusing on the underlying fairness of the [proceeding] rather than on the virtually inevitable presence of immaterial error."[45] We reserve our judgment only for issues that, once resolved, have some practical effect.[46]

We see no reason why the discretionary concurrent sentence doctrine should not be applied when reviewing collateral challenges to convictions. *Ray*, of course, created a dichotomy for the doctrine, effectively "abolish[ing] the doctrine for direct review of federal convictions" while leaving it available for direct review of federal sentences.[47] But the same dichotomy does not (and should not) exist on collateral review. To understand why, a quick primer on the

---

[44] *See Charles*, 932 F.3d at 158–59 (citing *United States v. Hastings*, 461 U.S. 499, 501 (1983), and *Benton*, 395 U.S. at 799 ((White, J., concurring) ("Rather than permit other cases to languish while careful review of these redundant counts is carried to its futile conclusion, judicial resources might be better employed by moving on to more pressing business.")).

[45] *Rose v. Clark*, 478 U.S. 570, 577 (1986) (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 681 (1986)).

[46] *See United States v. Cacace*, 796 F.3d 176, 190 (2d Cir. 2015) ("We decline to reach this constitutional question, however, because assuming arguendo that there was a constitutional violation, [it was] harmless."); *see also United States v. Adekanbi*, 675 F.3d 178, 185 (2d Cir. 2012) ("Assuming without deciding that" error occurred, "we easily conclude the error was harmless.").

[47] *See Dhinsa*, 917 F.3d at 76 n.4 (cleaned up); *see also supra* notes 27-31, and accompanying text.

difference between a direct criminal appeal and a post-conviction collateral proceeding is necessary.

A direct appeal allows for a frontal attack on a conviction, a sentence, or both. Absent waiver, a convicted defendant may appeal the judgment of conviction as a matter of right, and the appeal requires nothing more than some concrete stake in the outcome of the case to maintain Article III standing.[48] In reviewing for standing, courts have been mindful that a criminal conviction often gives rise to a variety of "adverse collateral consequences," and that such consequences thus keep a defendant's appeal live.[49] *Ray*'s holding—that the concurrent sentence doctrine is not available on direct appeal when the defendant is challenging a conviction, given the existence of mandatory special assessments imposed on defendants at the time of sentencing[50]—then makes perfect sense. A

---

[48] *See* 28 U.S.C. § 1291 (allowing for appeals from final orders of the district courts); *see also United States v. Mladen*, 958 F.3d 156, 160 (2d Cir. 2020) ("In the federal judicial system, a defendant convicted of a crime . . . has the right to challenge the judgment of conviction in a direct appeal.").

[49] *Ball v. United States*, 470 U.S. 856, 865 (1985) (writing in the direct appeal context, "[t]he separate conviction, apart from the concurrent sentence, has potential adverse collateral consequences that may not be ignored."); *cf. Spencer v. Kemna*, 523 U.S. 1, 8 (1998) (writing in the habeas context, "[i]n recent decades, we have been willing to presume that a wrongful criminal conviction has continuing collateral consequences (or, what is effectively the same, to count collateral consequences that are remote and unlikely to occur.)").

[50] *See Ray*, 481 U.S. at 737.

special assessment fee is a sufficient basis for a defendant to maintain a concrete stake in challenging a conviction on direct appeal,[51] and the appeal itself is a vehicle for challenging any part of the judgment.

A collateral attack under § 2255, in contrast, presents a wholly different context in which a court may grant relief.[52] The crux of a collateral proceeding is a challenge to the defendant's custody.[53] Whether the defendant challenges his custody by contesting the length of the sentence imposed or by drilling deeper and challenging the validity of the conviction giving rise to the custodial sentence, the basis for the attack is always the defendant's custody.[54] While the Court's "understanding of custody has broadened" over the decades,[55] "precedent firmly

---

[51] *See Rutledge v. United States*, 517 U.S. 292, 302–03 (1996) (finding that an assessment was a collateral consequence of the defendant's unauthorized cumulative sentence).

[52] *See Carranza v. United States*, 794 F.3d 237, 242 (2d Cir. 2015) (explaining that a defendant seeking to bring a collateral attack must clear a "higher hurdle," and that "errors which may justify reversal on direct appeal do not necessarily warrant collateral relief." (internal quotation marks omitted)); *see also United States v. Ross*, 801 F.3d 374, 382 (3d Cir. 2015) (drawing a distinction between the direct appeal context and the collateral review context).

[53] *See* 28 U.S.C. § 2255 ("A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released . . . may move the court which imposed the sentence to vacate, set aside or correct the sentence.").

[54] *See id*.

[55] *Rumsfeld v. Padilla*, 542 U.S. 426, 437 (2004).

establishes that the use of the term in federal habeas statutes is 'designed to preserve the writ . . . as a remedy for *severe restraints on individual liberty.*'[56]  A special assessment may still grant a defendant constitutional standing to bring a claim.[57]  But the claim itself must be grounded in an attack on custody.  Relief from fines, special assessment fees, restitution, and other noncustodial punishments may be byproducts of a defendant's successful collateral attack on a conviction, but they cannot themselves serve as bases for collateral relief.[58]

With custody being at the center of the collateral proceeding, the prejudice required to obtain relief must ultimately relate to the challenged custody.  Here, Kassir is concurrently serving two unchallenged life sentences on top of his 20-

---

[56] *Ross*, 801 F.3d at 379 (emphasis in original) (quoting *Hensley v. Mun. Court, San Jose Milpitas Judicial Dist.*, 411 U.S. 345, 351 (1973)).

[57] *See Dhinsa*, 917 F.3d at 77–78.

[58] *See Kaminski v. United States*, 339 F.3d 84, 87 (2d Cir. 2003) ("[C]ollateral challenges have historically been permitted through habeas only when an interest as compelling as freedom from custody is at stake."); *see also United States v. Rutigliano*, 887 F.3d 98, 105 (2d Cir. 2018) (finding that restitution order did not equate to custodial punishment).  *Cf. Gonzalez v. United States*, 792 F.3d 232, 237 (2d Cir. 2015) (noting that only in the "rare situation" where the "restitution order amounts to a severe restraint on liberty" might a restitution order support a § 2255 motion).  It may be that, in the event of a successful challenge to a conviction, the defendant will receive the incidental benefit of also eliminating a financial penalty.  But that does not change the fact that a challenge to a modest financial penalty or special assessment fee, alone, will not justify a collateral attack under § 2255 on a conviction.  *See Ryan*, 688 F.3d at 849 ("A collateral attack under § 2241, § 2254, or § 2255 contests only custody, however, and not fines or special assessments.")

year sentence for his 18 U.S.C. § 842(p) conviction (among other sentences). To be sure, vacatur of his § 842(p) conviction would lead to vacatur of that 20-year sentence. And we are not prepared to say, as the Government contends, that such relief is never cognizable at all under § 2255.[59] But we are prepared to say that absent a showing of prejudice with respect to custody, a court proceeding under § 2255 retains discretion to decline to consider such a challenge.

We are aware of statements by the Fourth and Eighth Circuits suggesting that the discretionary concurrent sentence doctrine is not applicable where a defendant challenges a conviction under § 2255.[60] But those statements have come in *dicta*, in cases involving challenges only to sentences, not to convictions. Moreover, they are based on what we regard as an overreading of the Supreme

---

[59] We are mindful that the Supreme Court has said that collateral attack statutes are to be construed broadly, and that courts have the "power to fashion appropriate relief other than immediate release," *Peyton v. Rowe*, 391 U.S. 54, 66 (1968) (holding that prisoner may challenge consecutive sentence he is not yet serving), and that while a petitioner must be in custody at the time he moves for collateral review, his case does not become moot upon his unconditional release from custody, *Carafas v. Lavallee*, 391 U.S. 234, 237–38 (1968) ("On account of these 'collateral consequences,' the case is not moot.").

[60] *See Charles*, 932 F.3d at 160; *Oslund*, 944 F.3d at 746 n.2; *Eason v. United States*, 912 F.3d 1122, 1123 (8th Cir. 2019).

Court's decision in *Rutledge v. United States*.[61]  There, the Court held that a special assessment provided enough of a collateral consequence to warrant vacating an invalid conviction.[62]  The decision—reached in the context of a *direct appeal*—is essentially the same holding as the one reached in *Ray*, which the *Rutledge* Court acknowledged with a "cf." citation.[63]  *Rutledge* had no occasion to consider, much less discuss, the question of whether or how the concurrent sentence doctrine applies to challenges to convictions on collateral attack.  Thus, neither *Rutledge* nor *Ray* speaks to collateral proceedings, and as has been explained, "[t]he applicability of the concurrent sentence doctrine on direct appeal is . . . distinct from the question presented here, on collateral review under section 2255."[64]

---

[61] 517 U.S. 292 (1996); *see Eason*, 912 F.3d at 1123 (citing *Rutledge*); *Charles*, 932 F.3d at 160 (discussing *Rutledge* and citing *Eason*); *Oslund*, 944 F.3d at 756 n.2 (discussing *Rutledge* and *Eason*).

[62] *See Rutledge*, 517 U.S. at 301–03.

[63] *Id*. at 301 (citing *Ray*, 481 U.S. at 737).

[64] *Ross*, 801 F.3d at 382.  A quick word on *Ross*: The Third Circuit appears to have endorsed the bottom-line rule that the Government asks us to adopt, namely that a defendant cannot be said to seek "release from custody" within the meaning of § 2255 when he challenges only one of his convictions and would still face multiple concurrent sentences of equal or greater length even if successful on that challenge.  *See id*.  The Third Circuit's opinion, however, focused entirely on whether the defendant could be said to be "in custody" solely by virtue of the special assessment that was imposed on his challenged conviction, or on the collateral consequences that might flow from that conviction.  *See id*. at 379–381.  Though we reiterate that we do not reach the Government's argument, we note some perplexity at the Third Circuit's reasoning.  It is unclear to us why the "custody" from which a defendant seeks "release" would not simply be the

22

We decline to go so far as to declare application of the concurrent sentence doctrine mandatory in all cases where the petitioner is concurrently serving an equal or longer sentence on another valid count of conviction. Far from it. The concurrent sentence doctrine, as we have noted, has traditionally been a discretionary doctrine rooted in judicial convenience.[65] What's more, § 2255 is a "remedial statute" that should be "construed liberally"[66] and can "be utilized to provide a more flexible remedy" than "immediate and unconditional" release from custody.[67] Thus, there may be cases where, in a court's reasoned discretion, a decision on the merits sooner rather than later is warranted and preferable.

As has traditionally been done, courts may look to the so-called *Vargas* factors to determine whether to rely on the concurrent sentence doctrine.[68] These five factors—the unreviewed conviction's effect on the petitioner's eligibility for

---

incarceration to which he is currently subjected, rather than the special assessment or collateral consequences that the Third Circuit discussed. The challenging question in such a situation, it would seem, is not whether a defendant sitting in prison is in "custody," but whether the relief that he seeks (vacatur of only one concurrent sentence) can be characterized as "release."

[65] *See Benton*, 395 U.S. at 791.

[66] *Grimes v. United States*, 607 F.2d 6, 8 (2d Cir. 1979).

[67] *Andrews v. United States*, 373 U.S. 334, 339 (1963).

[68] *See Vargas*, 615 F.2d at 959–60.

parole, the future application of recidivist statutes for a future offense by the petitioner, the petitioner's credibility in future trials, the possibility of pardon, and societal stigma of a conviction[69]—provide helpful guideposts for discerning the impact of a decision to leave a conviction unreviewed.

Applying them here, the factors prove completely unhelpful to Kassir's case. Our reservation of judgment cannot affect Kassir's future eligibility for parole "[s]ince there is no parole in the federal system."[70] Because Kassir will be in prison for the rest of his life, it is hard to imagine how he might ever face the prospect of "an increased sentence under a recidivist statute for a future offense."[71] There seems little prospect that his 18 U.S.C. § 842(p) conviction will be used to impeach his character at a future trial, or that his chances for a future pardon would be any more or less likely if this one conviction alone were vacated. Finally, any societal stigma associated with his § 842(p) conviction—especially in comparison to the stigma already carried by his conviction for support of terrorism and conspiracy to kill—provides little ground for concern about adverse effects. In sum, there is

---

[69] *See id.*

[70] *United States v. Delgado*, 971 F.3d 144, 159 (2d Cir. 2020).

[71] *Rutledge*, 517 U.S. at 302.

no meaningful possibility that Kassir's unreviewed § 842(p) conviction will expose him to substantial risk of adverse collateral consequences.

We also note that Kassir's claim—that his § 842(p) conviction must be vacated in light of *Dimaya*—involves questions of law that do not require presentation of new evidence or examination of witnesses. There is no apparent detriment in leaving those questions for a later time—which might never arrive—when they actually become material to the length of the defendant's custody. By contrast, a district court might very well take a different view if a defendant's claim were premised on allegedly new evidence, where postponement of its consideration might run the risk of memories fading, witnesses becoming unavailable, or evidence otherwise subject to spoliation. Since the courts could address Kassir's claim at a later date without prejudicing his ability to make his case, we exercise our discretion to apply the concurrent sentence doctrine to decline review.

One final observation: In his insistence for a merits decision, Kassir argues that his situation could change. He claims that his life sentences may "someday be rendered constitutionally invalid" because "[o]ne never knows what the future will bring." Appellant's Reply Br. at 5. This possibility—however speculative,

unlikely, and remote—is not inconsequential. If a new rule of constitutional law or newly discovered evidence one day invalidated Kassir's dual life sentences, Kassir's challenge to his 20-year sentence would suddenly take on potential consequence. In recognition of this possibility (as unlikely as it appears now), we affirm the district court's judgment without prejudice to Kassir renewing this claim if and when he brings a timely and colorable challenge to both of his concurrent life sentences. We note that Kassir has already unsuccessfully challenged his other convictions, and we do not mean to suggest that such a challenge can be mounted. But in the event that something in the future changes the validity of Kassir's life sentences, we see no reason why a court could not consider his *Dimaya* claim at that time, evaluating the claim's timeliness by reference to when he raised it in the present action. In such circumstances, of course, the Government would be entitled to raise any other defenses that it might wish to advance. Come what may, Kassir would not be denied relief because of our exercise of discretion today.

## III.   Conclusion

In sum, we hold as follows:

1. The discretionary concurrent sentence doctrine remains viable in the context of a collateral proceeding. Courts may decline to consider

26

collateral challenges to a conviction's validity if the petitioner is concurrently serving an equal or longer sentence on another valid count of conviction.

2. Kassir's challenge to his 18 U.S.C. § 842(p) conviction, even if successful, offers him no reasonable prospect of a shorter time in custody. He will remain in prison on dual life sentences for conspiring to kill people. We therefore exercise our discretion not to reach the merits of his claim.

3. In the event that Kassir were someday able to bring a timely and valid challenge to his two concurrent life sentences, he may renew his present *Dimaya* challenge by reference to its timeliness in the present action.

We therefore **AFFIRM** the district court's judgment, without prejudice to Kassir renewing the claim if he is authorized to challenge the validity of his life sentences in the future.