21-2665-cr
*United States v. Torres*

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT.  CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007 IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1.  WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER").  A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 25th day of January, two thousand twenty-three.

PRESENT:
> ROBERT D. SACK,
> JOSEPH F. BIANCO,
> ALISON J. NATHAN,
> *Circuit Judges*.

---

United States of America,

> *Appellee,*

> v.                                                                21-2665-cr

Aquilino Torres, Sealed Defendant 1,

> *Defendant-Appellant.*

---

FOR APPELLEE:                          DAVID J. ROBLES, Assistant United States Attorney (Sarah L. Kushner and David Abramowicz, Assistant United States Attorneys, *on the brief*), *for* Damian Williams, United States Attorney for the Southern District of New York, New York, NY.

FOR DEFENDANT-APPELLANT:    SARAH BAUMGARTEL, Federal Defenders of New York, Inc., New York, NY.

Appeal from a judgment of conviction and sentence of the United States District Court for the Southern District of New York (Cote, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Defendant Aquilino Torres appeals from a judgment of conviction, entered on October 19, 2021. Following a jury trial, Torres was found guilty of: (1) kidnapping, in violation of 18 U.S.C. §§ 1201(a)(1) and (b); (2) kidnapping of a minor, in violation of 18 U.S.C. §§ 1201(a)(1), (b), and (g); and (3) stalking, in violation of 18 U.S.C. §§ 2261A(2)(A) and (B), 2261(b)(3), and 2265A. The district court sentenced Torres principally to 292 months' imprisonment on each of the kidnapping counts and 240 months' imprisonment on the stalking count, with all three sentences to run concurrently, followed by five years of supervised release.

These convictions related to Torres's assault, kidnapping, and stalking of his then-romantic partner ("Adult Victim") and her seven-year-old son ("Minor Victim") in 2020. As part of the government's evidence at trial, Adult Victim testified to the following: On October 5, 2020, Torres took Adult Victim and Minor Victim via train to a motel in the Bronx where Torres locked the door. Over the course of the night, Torres broke Adult Victim's jaw in several places and raped her. He also slapped Minor Victim's face. While Torres was assaulting Adult Victim, he told her about how he abused a prior romantic partner ("Prior Adult Victim"). Torres told Adult Victim that he had stabbed Prior Adult Victim, left Prior Adult Victim with nothing to eat or drink, and that Prior Adult Victim was "lucky to call the ambulance in time for her to survive." App'x at 231–32. Torres then said he would "hang" Adult Victim and that "they will find [Minor Victim's] body in the river the next day." App'x at 232. The following morning, Torres took Adult Victim and Minor Victim to an apartment in Washington Heights, warning her "not to do anything stupid."

2

App'x at 248. Over the next five days, Torres refused to let Adult Victim or Minor Victim leave the apartment, despite Adult Victim expressing that she needed medical attention for her broken jaw. Although Torres left the apartment several times over the five days and Adult Victim had her cellphone while he was away, she did not initially attempt to escape or ask for help due to her fear of Torres. However, on the evening of their fifth day of confinement at the apartment, after Torres left the apartment, Adult Victim took her son and fled to a domestic violence shelter where she had previously stayed. After Torres realized that Adult Victim had escaped, he texted and called her hundreds of times, threatening to find and harm her. In addition to Adult Victim's testimony, the government introduced, among other things, medical testimony and records relating to Adult Victim's injuries, numerous threatening and harassing messages that Torres sent to Adult Victim, video surveillance footage, and cellphone location data.

On appeal, Torres argues that he must be granted a new trial on the kidnapping counts and resentenced on the stalking count. Specifically, Torres contends that his conviction on the kidnapping counts must be vacated because the district court erroneously admitted evidence of a prior assault committed by Torres. Additionally, although Torres does not challenge his conviction on the stalking count, he argues that resentencing is required because the district court erroneously applied the recidivist sentencing provision of 18 U.S.C. § 2265A, leading it to determine that the offense's statutory maximum was twenty years of imprisonment, rather than ten years, and sentenced him to twenty years. We assume the parties' familiarity with the underlying facts, the procedural history, and issues on appeal, to which we refer only as necessary to explain our decision to affirm.

## I.    Evidentiary Ruling

On appeal, Torres argues he must be granted a new trial on the kidnapping counts because the district court committed prejudicial error by admitting evidence regarding Prior Adult Victim, whom Torres had stalked, threatened, and assaulted in 2013.  Specifically, Prior Adult Victim testified that she had been in a romantic relationship with Torres between 2010 and 2013, during which they had three children together, and that after they broke up in 2013, Torres held her—against her will—in an apartment for two-to-three weeks and viciously assaulted her, raped her, and beat her with a belt when she tried to leave.  Furthermore, she testified that she was only freed when law enforcement visited the apartment and discovered her behind a door that Torres had barricaded.  In addition to Prior Adult Victim's testimony, the district court admitted into evidence Prior Adult Victim's medical records related to the 2013 assault, and the transcript from the state court proceeding in which Torres pleaded guilty to assaulting Prior Adult Victim (collectively, "prior assault evidence").

The district court, over Torres's objection, admitted the prior assault evidence on two separate grounds—namely, (1) as prior act evidence under Federal Rule of Evidence 404(b) to prove Torres's knowledge and intent with respect to the charged kidnappings of Adult Victim and Minor Victim, and (2) as "inextricably intertwined" with the charged crimes, App'x at 64, in order to demonstrate the state of mind of Adult Victim to whom Torres had allegedly recounted his abuse of Prior Adult Victim during the charged kidnappings.  The district court also concluded that the balancing of the factors under Federal Rule of Evidence 403 "weigh[ed] in favor of admitting the evidence" because the evidence (1) would be a presented in a "relatively streamlined" manner with no "suggest[ion] that it [would] result in confusion" and (2) would not be unduly prejudicial

4

because the prior assault evidence was "no more sensational or disturbing" than the allegations relating to the charged crimes. App'x at 54–56 (internal quotation marks and citation omitted).

We review evidentiary rulings "deferentially" and will reverse them "only for abuse of discretion[,] which we will identify only if the ruling was arbitrary and irrational." *United States v. Abu-Jihaad*, 630 F.3d 102, 131 (2d Cir. 2010) (internal quotation marks and citations omitted). Under Rule 404(b), evidence of a person's other crimes, wrongs, or acts may be admitted to prove, among other things, knowledge and intent. Fed. R. Evid. 404(b). "Our Circuit takes an inclusionary approach to the admission of prior crimes evidence, under which such evidence is admissible for any purpose other than to show the defendant's criminal propensity." *United States v. McCallum*, 584 F.3d 471, 475 (2d Cir. 2009) (internal quotation marks and citation omitted). To determine if evidence was properly admitted under Rule 404(b), we consider "whether (1) it was offered for a proper purpose; (2) it was relevant to a material issue in dispute; (3) its probative value is substantially outweighed by its prejudicial effect; and (4) the trial court gave an appropriate limiting instruction to the jury if so requested by the defendant." *United States v. Scott*, 677 F.3d 72, 79 (2d Cir. 2012) (internal quotations marks and citation omitted) (noting that this inquiry is derived from *Huddleston v. United States*, 485 U.S. 681 (1988)). Applying that framework, we conclude that the district court did not abuse its discretion in admitting the prior assault evidence.

With respect to the requisite proper purpose, the district court was well within its discretion in finding that the prior assault evidence was probative of Torres's knowledge and intent with respect to the charged kidnappings. *See United States v. Williams*, 930 F.3d 44, 63 (2d Cir. 2019) (noting that district courts "have significant discretion in determining whether other-crimes evidence is admissible for a proper purpose"). As we have explained, "[w]here a defendant claims

5

that his conduct has an innocent explanation, prior act evidence is generally admissible to prove that the defendant acted with the state of mind necessary to commit the offense charged." *United States v. Pascarella*, 84 F.3d 61, 69 (2d Cir. 1996) (internal quotation marks and citation omitted). Here, the kidnapping counts required the government to prove that Torres "knowingly and willfully" confined Adult Victim and Minor Victim against their will—that is, the government had to "prove that the defendant held [the victims] for an appreciable period of time, against [their] will, and that the defendant knew he was doing so." App'x at 1114 (jury charge); *see United States v. Pedroza*, 750 F.2d 187, 204–05 (2d Cir. 1984). Thus, the prior assault evidence bore directly on Torres's intent to confine Adult Victim and his knowledge that she did not believe that she was free to leave.

Although Torres now claims that his knowledge and intent were not in dispute at trial, that assertion is belied by the record. For example, Torres testified that he did not believe Adult Victim wanted to leave the Washington Heights apartment. Defense counsel emphasized this point in summation:

> The point is [Torres] has to do it knowingly and willfully. So if he thinks that [Adult Victim is] staying—genuinely believes she's staying because they're going to try to work it out because that's is [sic] the course of their dealing has been, then he is not guilty of kidnapping because what's in his mind is important, and that's part of the reason why he thought it was important for him to tell you what was in his mind.

> And remember what he told you. He genuinely did not take any steps to prevent her from leaving. She was there by herself with her phone, free to go at any time, and he told you all about that. That he went about his business. He did errands.

App'x at 1089. Therefore, the district court properly concluded that Torres's knowledge and intent were in dispute at the trial. *Cf. United States v. Ortiz*, 857 F.2d 900, 903–04 (2d Cir. 1988) (noting that "a defendant may completely forestall the admission of other act evidence on the issue of intent by expressing a decision not to dispute that issue with sufficient clarity that the trial court

6

will be justified . . . in charging the jury that if they find all the other elements established beyond a reasonable doubt, they can resolve the issue against the defendant because it is not disputed." (alteration adopted) (internal quotation marks and citation omitted)).

We also find unpersuasive Torres's argument that the prior assault evidence was too factually distinct from his abuse of Adult Victim to be probative on the issues of knowledge or intent. *See McCallum*, 584 F.3d at 475 ("Where such evidence is offered for the purpose of establishing the defendant's knowledge or intent, we require that the government identify a similarity or connection between the two acts that makes the prior act relevant to establishing knowledge of the current act." (internal quotation marks and citation omitted)). We recognize that the assaults involved different women, different locations, different actions by Torres, and were separated by seven years. However, there were also compelling similarities between the prior episode and the charged conduct. In both cases, Torres was alleged to have: confined romantic partners against their will in apartments; continuously beaten and abused them; deprived them of adequate food; verbally demeaned and threatened them; raped them; threatened to murder their children; and harassed, threatened, and tried to locate them after they escaped. Indeed, Torres himself connected the two events by allegedly describing the abuse that he had inflicted on Prior Adult Victim to Adult Victim while he was beating Adult Victim in the Bronx motel room. Furthermore, as the district court noted, although Torres's abuse of Prior Adult Victim and Adult Victim were separated by seven years, Torres's abuse of Adult Victim "occurred only shortly after Torres's release from prison after serving his four and a half year sentence on the 2013 case." Special App'x at 8; *see also United States v. Larson*, 112 F.3d 600, 605 (2d Cir. 1997) (noting that there is no "bright-line rule as to how old is too old" and that cases must be examined on a "case-

7

by-case basis"). Thus, the district court did not err in ruling that there were sufficient similarities between the events for the prior assault evidence to be relevant.

Nor is there merit to Torres's related contention that the relevance of the prior assault evidence implicated propensity inferences. The prior assault evidence indicated that Torres engaged in similar conduct in the past *with the intent of confining Prior Adult Victim*, which tends to discredit the defense's argument that, despite his similar abuse of Adult Victim, he did not intend to confine her. Indeed, Torres's decision to inform Adult Victim of his prior abuse, while he was in the process of breaking her jaw, supports the inference that Torres evoked his abuse of Prior Adult Victim to coerce Adult Victim into acquiescing to his demands, lest she meet a similar fate. Likewise, the prior assault evidence showed that Torres's reaction to Prior Adult Victim's escape—attempting to locate her and threatening her—was similar to his conduct after Adult Victim fled, thereby supporting the inference that he also intended to confine Adult Victim. In short, contrary to Torres's contention, the prior assault evidence was relevant to disputed issues at trial without resorting to propensity inferences.

The district court also found that the prior assault evidence was independently admissible on the issue of Adult Victim's state of mind. The district court reasoned that when offered for that purpose, the prior assault evidence constituted direct evidence of the charged crimes and, thus, was not evidence of other crimes or acts under Rule 404(b). *See United States v. Quinones*, 511 F.3d 289, 309 (2d Cir. 2007) (explaining that "uncharged criminal conduct is not evidence of other crimes, wrongs, or acts under Rule 404(b) if that conduct is inextricably intertwined with the evidence regarding the charged offense" (internal quotation marks and citation omitted)). As set forth below, regardless of whether it was admitted for this purpose as "inextricably intertwined" to the charged crimes or under Rule 404(b), the district court was well within its discretion to

8

separately admit the prior assault evidence on the issue of Adult Victim's state of mind, which was a critical issue in the case. *See generally* App'x at 1089 (defense counsel noting, in summation, that she had "just spent a lot of time talking about what was in [Adult Victim's] mind").

Because the government was required to prove under the kidnapping charge that the victim was held against her will, *see United States v. Macklin*, 671 F.2d 60, 64 (2d Cir. 1982), threatening statements made by Torres to intimidate Adult Victim into not leaving the apartment are probative on the issue of whether she was free to leave. Importantly, Torres did not object to Adult Victim's testimony about Torres's recounting of his abuse of Prior Adult Victim to Adult Victim during her alleged captivity. Instead, Torres argues that the district court erred in allowing the government *to corroborate* Adult Victim's testimony by admitting Prior Adult Victim's testimony, the plea transcript relating to the assault of Prior Adult Victim, and her medical records. However, in *United States v. Everett*, we emphasized that Rule 404(b) evidence "has been consistently held admissible to corroborate crucial prosecution testimony." 825 F.2d 658, 660 (2d Cir. 1987) (noting that "the corroborating evidence must be both direct and significant"). Thus, in *Everett*, we found no abuse of discretion in the district court's admission of the testimony of a bank teller and surveillance photos to corroborate the testimony of a cooperating witness regarding the defendant's involvement in an uncharged bank robbery. *Id.* at 660–61; *see also United States v. Porter*, 881 F.2d 878, 886 & n.8 (10th Cir. 1989) (holding that evidence of other acts was properly admitted to corroborate testimony of prosecution witness whose credibility had been attacked).

Similarly, in the instant case, Adult Victim's testimony regarding Torres's statements to her about his abuse of Prior Adult Victim was highly probative to support her belief as to why she was not free to leave, especially because Torres left her alone multiple times during her alleged captivity at the Washington Heights apartment and she did not immediately attempt to escape.

*See, e.g.*, *United States v. Faulls*, 821 F.3d 502, 508–09 (4th Cir. 2016) (holding that evidence of prior instances of domestic abuse were properly admitted under Rule 404(b) because "[a] jury could . . . reasonably conclude that the evidence demonstrated [the defendant's] control and dominion over [the victim], which was necessary to explain [the victim's] state of mind and her apparent willingness to remain with [the defendant] during the events leading up to the charged offenses [including kidnapping], even though [the victim] and [the defendant] were out in public, surrounded by others"). Thus, the prior assault evidence was direct and significant evidence corroborating Adult Victim's testimony that Torres in fact made these statements to her about Prior Adult Victim. Torres argues that no corroboration was necessary because defense counsel did not cross-examine Adult Victim about his statements to her relating to Prior Adult Victim. However, the absence of specific cross-examination on that portion of her testimony does not mean that Adult Victim's credibility was not a central issue in the case. To the contrary, Adult Victim's credibility was vigorously attacked during defense counsel's cross-examination of Adult Victim and in summation. In fact, defense counsel began her summation by suggesting to the jury that all of Adult Victim's testimony was fabricated:

> It was a dramatic tale [Adult Victim] told about what happened to her, snatched off the street, forced into a car, hands tied above her head with a string, held hostage by a man until she could make her escape, when he finally left her alone for long enough to grab her phone. It was dramatic and none of it was true, none of it. Though it was all made up [Adult Victim's] words had their intended effect. Mr. Torres ended up in federal court charged with kidnapping and stalking, crimes he did not commit.

App'x at 1061–62. In short, the district court committed no error in finding that the prior assault evidence was independently admissible to corroborate Adult Victim's testimony about her state of mind during the alleged captivity as it related to the element of whether she was being held against her will.

10

Finally, we discern no abuse of discretion in the district court's requisite balancing under Rule 403. *Scott*, 677 F.3d at 83–84. As noted above, the prior assault evidence was highly relevant to critical issues in dispute at the trial. With respect to potential prejudice, the prior assault evidence, horrifying as it was, was "no more inflammatory than the charges alleged in the indictment."[1] *Abu-Jihaad*, 630 F.3d at 133. Moreover, the district court further guarded against the danger of unfair prejudice by twice giving the jury clear limiting instructions as to the narrow purposes for which they could consider the prior assault evidence. *See United States v. Mercado*, 573 F.3d 138, 142 (2d Cir. 2009) (upholding Rule 403 determination where challenged evidence was "not especially worse or shocking than the transactions charged" and where district court "gave several careful instructions to the jury regarding what inferences it could draw from the admitted evidence").[2]

Accordingly, we conclude that the district court's admission of the prior assault evidence provides no ground for a new trial on the kidnapping convictions.

---

[1] We note that Torres points in his brief to additional lurid details of the 2013 case involving Prior Adult Victim—including evidence of Prior Adult Victim's "claim[] that Torres repeatedly impregnated her and chronically abused her during her teenage years," and evidence that Torres beat Prior Adult Victim with a "metal bat" during the 2013 assault and had Prior Adult Victim "tied up with her mouth taped shut," Appellant's Br. at 43–44, none of which were presented to the jury. In addition, although Torres argues that certain portions of his guilty plea transcript and Prior Adult Victim's medical records went beyond any permissible use of such evidence under Rules 404(b) and 403, the government did not draw the jury's attention to any portion of the plea transcript beyond Torres's allocution, nor did it elicit testimony or present arguments regarding Prior Adult Victim's medical records. Therefore, even assuming *arguendo* that those portions of the prior assault evidence were improperly admitted, that error was harmless. *See United States v. Paulino*, 445 F.3d 211, 219 (2d Cir. 2006).

[2] To the extent that Torres also argues that the government should not have been permitted to cross-examine him about his assault of Prior Adult Victim, we find that argument unavailing. Having chosen to testify, Torres had no right to avoid questions about the evidence of his prior assault that was properly admitted. *See Johnson v. United States*, 318 U.S. 189, 195–96 (1943).

## II. Sentencing

Torres was sentenced principally to 292 months' imprisonment on each of the kidnapping counts and 240 months on the stalking count, with all three sentences to run concurrently. Although Torres does not challenge his conviction on the stalking count, he argues that he should be resentenced on that count because the district court erroneously applied the recidivist sentencing provision of 18 U.S.C. § 2265A, thereby doubling that offense's statutory maximum from ten to twenty years, and sentenced him to twenty years. However, exercising our discretion under the concurrent-sentence doctrine, we decline to reach the merits of Torres's argument and affirm his sentence.

Under the concurrent-sentence doctrine, a court may "leave the validity of one concurrent sentence unreviewed when another is valid and carries the same or greater duration of punishment." *Al-'Owhali v. United States*, 36 F.4th 461, 466 (2d Cir. 2022) (internal quotation marks and citation omitted). Based on the Supreme Court's holding in *Ray v. United States*, 481 U.S. 736 (1987) (per curiam), we recognize that this doctrine is generally inapplicable for direct review of federal convictions because the separate mandatory special assessment on each count renders those counts non-concurrent. *See also Dhinsa v. Krueger*, 917 F.3d 70, 76 n.4 (2d Cir. 2019) (noting that the Supreme Court's decision in *Ray* effectively "abolished the concurrent sentence doctrine for direct review of federal convictions" (alteration adopted) (internal quotation marks and citation omitted)). However, even after *Ray*, we continue to "regularly apply" the doctrine "in direct appeals where a defendant challenges only the length of one concurrent sentence, rather than the legality of a conviction underlying that sentence." *Kassir v. United States*, 3 F.4th 556, 562 (2d Cir. 2021). The continued vitality of the doctrine "is premised on the same principle underlying the doctrine of harmless error—that is, to help promote the overall

functioning of our justice system, courts should conserve judicial resources by cleansing the judicial process of prejudicial error without becoming mired in harmless error." *Id.* at 561–62 (internal quotation marks and citation omitted). Consistent with this rationale, we have explained that, for the doctrine to apply, the court must "foresee with reasonable certainty that the defendant will suffer no adverse collateral consequences" from the court's decision to leave his sentence unreviewed. *Id.* at 562 (alteration adopted) (emphasis omitted). Such adverse collateral consequences include, among others, "eligibility for parole, the future application of recidivist statutes for a future offense by the [defendant], the [defendant's] credibility in future trials, the possibility of pardon, and societal stigma . . . ." *Id.* at 568 (citing *United States v. Vargas*, 615 F.2d 952, 959–60 (2d Cir. 1980)).

Torres argues that it cannot be said with "reasonable certainty" that the erroneous doubling of his stalking conviction will not cause him to suffer adverse collateral consequences. Torres emphasizes that he is not serving a life sentence and thus will face collateral consequences when he is released. In particular, Torres contends that the length of his stalking sentence may impact when he can seek relief from disabilities associated with that conviction and could be used to impeach him in a future proceeding. Torres also argues that a twenty-year sentence carries significantly greater stigma than a ten-year sentence. We are unpersuaded.

As an initial matter, because Torres's concurrent sentences on the kidnapping counts are longer than his sentence on the stalking count, his challenge to the stalking sentence will not affect the amount of time that he will spend in custody. Moreover, because Torres does not challenge his stalking *conviction*, he is subject to the mandatory special assessment, even if we were to agree with his sentencing argument. *Cf. Ray*, 481 U.S. at 737. In addition, there is little, if any, possibility that *the length* of Torres's stalking sentence—separate and apart from his unchallenged

13

stalking conviction and his kidnapping convictions and sentences—would affect his ability to seek relief from collateral consequences, be used to impeach him in a future proceeding, or carry greater stigma. Finally, since Torres's challenge to his stalking conviction "involves questions of law that do not require presentation of new evidence or examination of witnesses," there is "no apparent detriment in leaving those questions for a later time—which might never arrive—when they actually become material to the length of the defendant's custody." *Kassir*, 3 F.4th at 568; *cf. United States v. Jackson*, 658 F.3d 145, 153 (2d Cir. 2011) (concluding that "[a]ny error in the imposition of [defendant's] sentence of 384 months . . . did not affect his substantial rights and was, indeed, harmless, because this sentence runs concurrently with the two sentences of 540 months . . . ."); *see also United States v. Samas*, 561 F.3d 108, 111 (2d Cir. 2009) (concluding that "[e]ven if the district court erroneously imposed sentences of 151 months on [particular counts], [the defendant] cannot show (as he must for plain error review) that the error affected his substantial rights, because those sentences are to run concurrently with the mandatory minimum sentence of 240 months on [a different count].").

Accordingly, under the concurrent-sentence doctrine, we affirm the district court's sentence on the stalking count.

*     *     *

We have considered Torres's remaining arguments and find them to be without merit. Accordingly, the judgment of the district court is **AFFIRMED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court