PRECEDENTIAL
UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-4447
_____

UNITED STATES OF AMERICA

v.

EDWARD ROSS,

Appellant
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 05-cr-00398-001)
District Judge:  Honorable Gene E.K. Pratter
_____

Argued
June 3, 2015

Before:  FISHER, JORDAN, and SHWARTZ, *Circuit
Judges*

(Filed: September 15, 2015)

Will W. Sachse
Katherine U. Davis
Ellen L. Mossman
Dechert
2929 Arch Street
18th Fl., Cira Centre
Philadelphia, PA   19104

John McClam (Law Student)   (ARGUED)
University of Pennsylvania School of Law
3400 Chestnut Street
Philadelphia, PA   19104
        *Counsel for Appellant*

Emily McKillip
Floyd J. Miller
Robert A. Zauzmer   (ARGUED)
Office of United States Attorney
615 Chestnut Street
Suite 1250
Philadelphia, PA   19106
        *Counsel for Appellee*

_____

OPINION OF THE COURT
_____


JORDAN, *Circuit Judge*.

Edward Ross appeals from the denial of his motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his criminal sentence.  He asserts that his trial and appellate

counsel rendered ineffective assistance to him when they failed both to challenge a deficient jury instruction and to challenge the sufficiency of the evidence on one of his counts of conviction. Because we conclude that he has not satisfied a threshold requirement of section 2255, we will remand the case to the District Court with directions to dismiss the motion.

## I.  BACKGROUND

### A.  FACTUAL BACKGROUND

Ross was a drug dealer in Chester, Pennsylvania. Between March 25 and April 22, 2004, an undercover detective made four purchases of cocaine from him, and, on three of those occasions, surveillance officers watched Ross leave a residence at 2115 Madison Street and drive directly to a location agreed upon with the detective. The detective arranged a fifth cocaine purchase for April 23, 2004. Before that purchase took place, however, the police obtained a warrant to search 2115 Madison Street. When police officers saw Ross leave the residence and get into his car, they arrested him in the driveway. The officers searched his car and found four bags of cocaine and a loaded Colt .38 caliber handgun.

After the arrest, the police executed the search warrant for the residence. They discovered, among other things, a .25 caliber semi-automatic handgun, and a loaded 9mm pistol. Originally, the 9mm pistol had been semi-automatic, but the firing pin had been replaced with a submachine gun firing pin that enabled the gun to fire continuously. At Ross's subsequent criminal trial, an expert from the Bureau of

3

Alcohol, Tobacco, and Firearms testified that the 9mm pistol, as modified, met the definition of a machinegun set forth in 26 U.S.C. § 5845(b).

## B.    PROCEDURAL HISTORY

In March 2006, a federal grand jury returned a superseding indictment charging Ross with four counts of distribution of cocaine, in violation of 21 U.S.C. § 841(a)(1) (counts 1-4); possession with intent to distribute 500 grams or more of cocaine, in violation of 21 U.S.C. § 841(a)(1) (count 5); carrying a firearm during and in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1) (count 6); possession of a machinegun in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(B)(ii) (count 7); possession of a machinegun, in violation of 18 U.S.C. § 922(o) (count 8); and two counts of possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1) (counts 9 and 10).

Ross's case went to trial.  After the parties had finished presenting evidence, the district court instructed the jury; however, regarding count 8, the court did not say – and Ross's trial counsel failed to object and insist – that as part of proving Ross possessed a machinegun, the government was required to prove beyond a reasonable doubt that he had specific knowledge of the firearm's characteristics that made it a "machinegun" as defined by statute, specifically 26 U.S.C. § 5845(b).  The jury found Ross guilty on all counts.

At sentencing, because Ross had a prior conviction for a felony drug trafficking offense and was also, on count 5, convicted of an offense involving 500 grams or more of

4

cocaine, he was subject to a mandatory minimum penalty of 10 years' imprisonment. He was further subject to a mandatory consecutive term of 30 years' imprisonment because he was, on count 7, convicted of possessing a machinegun in furtherance of a drug trafficking crime. The district court found that Ross was a career offender under section 4B1.1 of the United States Sentencing Guidelines and sentenced him to concurrent terms of 10 years' imprisonment on counts 1, 2, 3, 4, 5, 8, and 10, followed by a consecutive term of 30 years' imprisonment on count 7. The court imposed a total term of eight years' supervised release, a fine of $3,000, and an $800 special assessment – that is, $100 for each count of conviction. On the government's motion, the district court dismissed counts 6 and 9.

Ross filed a direct appeal. He argued that the district court erroneously concluded that 18 U.S.C. § 924(c)(1)(B)(ii) required the imposition of thirty years' imprisonment on count 7, that the court further erred by increasing his mandatory minimum sentence based on a prior conviction, and that there was insufficient evidence to prove that he had violated 18 U.S.C. § 922(g). He also challenged the constitutionality of 18 U.S.C. §§ 922(o) and 922(g)(1). On April 27, 2009, we affirmed his conviction. *United States v. Ross*, 323 F. App'x 117, 120 (3d Cir. 2009).

Sixteen months later, in August 2010, Ross filed his motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255, and he filed a supplemental motion in September 2013. The District Court denied those motions and refused to issue a certificate of appealability. The Court predicted that we would apply the reasoning of the Supreme Court's decision in *Staples v. United States*, 511 U.S. 600

5

(1994), and would conclude that Ross's conviction under section 922(o) was unlawful because the jury was not required to find that Ross had specific knowledge of the 9mm pistol's firing characteristics. Nevertheless, the Court reasoned that any error with respect to Ross's conviction under section 922(o) did not cause prejudice under *Strickland v. Washington*, 466 U.S. 668 (1984), for two reasons: first, because Ross is classified as a Category VI career criminal, and so the section 922(o) conviction could not change his criminal history category in any future federal sentencing proceeding; second, because, even if the section 922(o) conviction were vacated, Ross would not be released from custody any sooner given the concurrency of his sentence for that count with the time he had to serve on other counts of conviction.

Ross timely appealed. He chose to apply directly to us for a certificate of appealability, which we granted. The certificate of appealability limited Ross to raising the issue of whether his trial and appellate counsel rendered ineffective assistance by failing to argue that the government introduced insufficient evidence to convict him of possessing a machinegun as charged in count 8 and that the jury instructions did not require the jury to find as an essential element of that crime that he knew of the characteristics of the firearm that brought it within the statutory definition of "machinegun." (App. at 23.) In the certificate of appealability, we stated that, "jurists of reason would debate the District Court's conclusion that appellant did not suffer prejudice under *Strickland v. Washington*, 466 U.S. 668 (1984)," and, in particular, we noted that it was debatable whether "his conviction under § 922(o) did not increase his actual sentence and would have no effect under the federal

6

Sentencing Guidelines on the sentence imposed for any federal conviction in the future." (App. at 23.)

## II.    DISCUSSION[1]

Two questions are before us. The first, raised by the government, is whether the relief that Ross seeks is cognizable under section 2255. The second, pressed by Ross, is whether section 922(o) includes a mens rea element that requires the government to prove that a defendant had specific knowledge of a firearm's characteristics. Because we answer the first question in the negative, we cannot reach the second.

Ross bases his section 2255 motion on the alleged ineffective assistance of his counsel at trial and on direct appeal. He argues that those lawyers performed deficiently in failing to challenge the sufficiency of evidence presented to prove a violation of section 922(o) and in failing to object to the associated jury instruction. We note at the outset that, had Ross challenged his conviction under section 922(o) on direct appeal, there is a fair likelihood we would have vacated that conviction and remanded for resentencing.[2]    But this case

---

[1] The District Court had jurisdiction under 28 U.S.C. § 2255. We have appellate jurisdiction pursuant to 28 U.S.C. § 2253. We exercise plenary review over the District Court's legal conclusions and apply the clearly erroneous standard to its factual findings. *Cradle v. United States ex rel. Miner*, 290 F.3d 536, 538 (3d Cir. 2002).

[2] Given the opportunity, we might join our sister circuits in holding that, to obtain a conviction under section 922(o), the government must prove beyond a reasonable

comes before us now as a collateral attack on the conviction and sentence, not as a direct appeal, and the forms of relief remaining to Ross are severely limited by statute. He may be right that the 922(o) conviction is unlawful, but, given the current posture of the case, not every wrong is in our power to

doubt that the defendant knew of the characteristics of the firearm that render it a "machine gun" within the meaning of section 5845(b). *See United States v. Smith*, 508 F.3d 861, 866 n.3 (8th Cir. 2007) (requiring the government to prove that the defendant "knew he possessed a weapon with characteristics that made it subject to registration requirements"); *United States v. Nieves-Castaño*, 480 F.3d 597, 599 (1st Cir. 2007) ("[T]he government's burden is to prove that the defendant had knowledge of the characteristics that brought the gun within the statutory definition … ."); *United States v. Camp*, 343 F.3d 743, 745 (5th Cir. 2003) ("Pursuant to *Staples*, the Government must prove a defendant knew the weapon he possessed had the characteristics that brought it within the statutory definition of a machinegun." (citations, emphasis, and internal quotation marks omitted)); *United States v. McGiffen*, 267 F.3d 581, 589-90 (7th Cir. 2001) (requiring the government to prove defendant knew of the weapon's characteristics that "bring it within the statutory definition"); *United States v. Gravenmeir*, 121 F.3d 526, 529-30 (9th Cir. 1997) (concluding the district court properly instructed the jury that the government must prove "the defendant knew that the firearm was a machinegun"); *United States v. Rogers*, 94 F.3d 1519, 1523 n.5 (11th Cir. 1996) (agreeing with the government that *Staples*'s reasoning applies with "equal force" to prosecutions under section 922(o)).

right. We are bound by the text of section 2255. That statute provides, in pertinent part:

> A prisoner *in custody* under sentence of a court established by Act of Congress *claiming the right to be released* upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a) (emphasis added).

The strictures of section 2255 constitute a threshold test in addressing Ross's post-conviction claims of ineffective assistance of counsel. The viability of those claims, if we were to reach their merit, is determined by the familiar two-part inquiry outlined in *Strickland v. Washington*, pursuant to which Ross has the burden of demonstrating (1) "that counsel's performance was deficient" and (2) "that the deficient performance prejudiced the defense." 466 U.S. at 687. The government contends, however, that, before getting to that inquiry, we must reject Ross's claim because it is not cognizable under section 2255. Even if Ross's trial and appellate counsel provided objectively unreasonable assistance that prejudiced him, he still would not be entitled to relief, according to the government, because he is not "claiming the right to be released" from "custody." Ross

responds that controlling precedent establishes that the $100 special assessment and the collateral consequences associated with the 922(o) conviction each constitute "custody" within the meaning of section 2255.

### A.    $100 SPECIAL ASSESSMENT

The plain text of section 2255 provides relief only to those prisoners who claim the right to be released from "custody."  The term "custody," however, is not as straightforward as it may at first appear.  In *McNally v. Hill*, 293 U.S. 131, 136-37 (1934), the Supreme Court held that discharge from physical confinement is the only relief available in a habeas corpus proceeding, but the Court reversed course in *Peyton v. Rowe*, 391 U.S. 54, 66-67 (1968), explaining that the concept of "custody" is expansive enough to encompass harms and remedies other than immediate discharge from physical confinement.  Since *McNally*, "our understanding of custody has broadened" to include many forms of restraint short of physical confinement, *Rumsfeld v. Padilla*, 542 U.S. 426, 437 (2004). *See, e.g.*, *Carafas v. LaVallee*, 391 U.S. 234, 237-38 (1968) (holding that, for mootness purposes, a petitioner is "in custody" if he is burdened by the "collateral consequences" of the challenged conviction); *Jones v. Cunningham*, 371 U.S. 236, 243 (1963) (holding that the conditions and restraints of a parole order constituted "custody").  Despite the elasticity the word "custody" has acquired, precedent firmly establishes that the use of the term in federal habeas statutes is "designed to preserve the writ of habeas corpus as a remedy for *severe restraints on individual liberty*."  *Hensley v. Mun. Court, San Jose Milpitas Judicial Dist.*, 411 U.S. 345, 351 (1973) (emphasis added); *Barry v. Bergen Cnty. Prob. Dep't*, 128

10

F.3d 152, 159 (3d Cir. 1997). The Supreme Court has distilled a three-part test for deciding what constitutes custody: the restraints on the petitioner must be (1) severe, (2) immediate (*i.e.*, not speculative), and (3) not shared by the public generally. *Hensley*, 411 U.S. at 351-53; Ira P Robbins, Habeas Corpus Checklists 465 (2014-2015 ed.).

We have not previously considered whether a monetary penalty such as the $100 special assessment associated with Ross's conviction under 922(o) is a "severe" restraint on a defendant's individual liberty, but the answer must be no. Supreme Court decisions holding that a petitioner suffered from a "severe restraint" on liberty have emphasized the physical nature of the restraints. *Hensley*, 411 U.S. at 351 (emphasizing that the petitioner "cannot come and go as he pleases" and that his "freedom of movement rests in the hands of state judicial officers, who may demand his presence at any time and without a moment's notice"); *Peyton*, 391 U.S. at 67 (1968) (holding that "a prisoner serving consecutive sentences is 'in custody' under any one of them"); *Jones*, 371 U.S. at 242 ("Petitioner is confined by the parole order to a particular community, house, and job at the sufferance of his parole officer. He cannot drive a car without permission."). Our sister circuits have followed the Supreme Court's lead. *See Calhoun v. Att'y Gen. of Colo.*, 745 F.3d 1070, 1074 (10th Cir. 2014) (holding that the requirement to register under state sex offender registration statute does not satisfy the "in custody" requirement because it involves no physical restraint), *cert. denied*, 135 S. Ct. 376 (2014); *Virsnieks v. Smith*, 521 F.3d 707, 718 (7th Cir. 2008) ("[T]he collateral consequences of a conviction, those consequences with negligible effects on a petitioner's physical liberty of movement, are insufficient to

11

satisfy the custody requirement.”); *Williamson v. Gregoire*, 151 F.3d 1180, 1183 (9th Cir. 1998) (noting that cases that find a severe restriction on a petitioner’s liberty “rely heavily on the notion of a physical sense of liberty – that is, whether the legal disability in question somehow limits the putative habeas petitioner’s movement”). Ross does not and could not argue that the $100 special assessment imposes any restriction on his freedom of movement, because, of course, it does not.

Our own precedent holds that the monetary component of a sentence is not capable of satisfying the “in custody” requirement of federal habeas statutes. *See Obado v. New Jersey*, 328 F.3d 716, 718 (3d Cir. 2003) (per curiam) (“The payment of restitution or a fine, absent more, is not the sort of ‘significant restraint on liberty’ contemplated in the ‘custody’ requirement of the federal habeas corpus statutes.”); *cf. Barry*, 128 F.3d at 161 (distinguishing “fine-only” sentences where a petitioner is not “in custody” from sentences that restrict a petitioner’s physical liberty on the basis that “fine-only” sentences “implicate only property, not liberty”). Our sister circuits too have held that fines, restitution orders, and other monetary penalties are insufficient to meet the “in custody” requirement. *See Bailey v. Hill*, 599 F.3d 976, 982 (9th Cir. 2010) (holding that a restitution order alone is insufficient to trigger the “custody” requirement); *Washington v. Smith*, 564 F.3d 1350, 1350 (7th Cir. 2009) (affirming denial of state habeas relief on a claim of ineffective assistance of counsel with respect to the restitution amount, “because it does not attack a custodial aspect of Washington’s sentence and, thus, does not state a claim for relief under the habeas corpus statutes”); *Mamone v. United States*, 559 F.3d 1209, 1209-12 (11th Cir. 2009) (per curiam) (holding that a restitution order

cannot be challenged in a section 2255 motion because a claim seeking discharge or reduction of a restitution order does not claim the right to be released from custody, even if it accompanies other claims that actually claim the right to be released from custody; *Erlandson v. Northglenn Mun. Court*, 528 F.3d 785, 788 (10th Cir. 2008) ("We agree with the district court that the payment of restitution or a fine, absent more, is not the sort of 'significant restraint on liberty' contemplated in the 'custody' requirement of the federal habeas statutes."(brackets and internal quotation marks omitted)); *Kaminski v. United States*, 339 F.3d 84, 89 (2d Cir. 2003) (holding that a restitution order of $21,000 does not constitute "custody" within the meaning of section 2255); *United States v. Bernard*, 351 F.3d 360, 361 (8th Cir. 2003) (applying "the plain and unambiguous language" of section 2255 to hold "that a federal prisoner cannot challenge the restitution portion of his sentence using 28 U.S.C. § 2255, because this statute affords relief only to prisoners claiming a right to be released from custody"); *United States v. Segler*, 37 F.3d 1131, 1137 (5th Cir. 1994) (holding that a $30,000 fine was not a sufficient restraint on liberty to meet the "in custody" requirement of section 2255); *United States v. Michaud*, 901 F.2d 5, 7 (1st Cir. 1990) ("A monetary fine is not a sufficient restraint on liberty to meet the 'in custody' requirement for § 2255 purposes." (internal citations omitted)). *But see United States v. Jones*, 403 F.3d 604, 607 (8th Cir. 2005) (holding that the defendant's *Strickland* claim merited relief under section 2255 in part because the defendant was required to pay a $100 special assessment, which the court stated constituted actual prejudice under *Strickland*); *United States v. Bass*, 310 F.3d 321, 330 (5th Cir. 2002) (failing to cite *Segler* and stating that the defendant was prejudiced by his counsel's ineffective assistance when he

13

was sentenced to pay an additional $50 assessment).  It seems clear, therefore, both as a matter of fact and law that Ross's $100 special assessment does not constitute any meaningful restriction on his liberty, let alone a severe restriction cognizable under section 2255.

Ross nevertheless argues that "a special assessment resulting from a wrongful conviction satisfies *Strickland*'s prejudice requirement" and that the Supreme Court's decisions in *Rutledge v. United States*, 517 U.S. 292 (1996), *Ray v. United States*, 481 U.S. 736 (1987) (per curiam), and *Ball v. United States*, 470 U.S. 856 (1985), "apply forcefully to show the prejudice of counsel's deficient performance here." (Opening Br. at 29.)  We do not agree.  *Rutledge* is easily distinguishable.  In that case, the Supreme Court held that conspiracy under 21 U.S.C. § 846 is a lesser included offense of the crime of maintaining a continuing criminal enterprise, forbidden by 21 U.S.C. § 848.  517 U.S. at 307.  The Court also held that the imposition of a special assessment constitutes "punishment" under the Double Jeopardy Clause.  *Id.* at 301.  As a result, the Supreme Court concluded that imposition of a special assessment for convictions under both sections 846 and 848 "amounts to cumulative punishment not authorized by Congress."  *Id.* at 303.  But we are not concerned here with whether a special assessment constitutes "punishment" within the meaning of the Double Jeopardy Clause; instead, we must determine whether it constitutes "custody" within the meaning of section 2255.  *Rutledge* is of no help in that task.

*Ray* also provides practically no guidance in answering the question before us.  In that case, the Supreme Court reviewed on direct appeal what has come to be called "the

concurrent sentence doctrine," *Ray*, 481 U.S. at 737, which says, in essence, that "courts are free to pretermit decision about convictions producing concurrent sentences, when the extra convictions do not have cumulative effects." *Ryan v. United States*, 688 F.3d 845, 849 (7th Cir. 2012).  In *Ray*, the Fifth Circuit had invoked the concurrent sentence doctrine and declined to review one of the petitioner's two convictions on direct appeal for possession of cocaine with intent to distribute because the sentences on the two counts of possession were concurrent.  *Ray*, 481 U.S. at 737.  The Supreme Court vacated the decision, holding that the petitioner was not serving concurrent sentences because the district court had imposed a $50 special assessment on each of the three counts on which the defendant had been convicted.  *Id*.  The Supreme Court concluded that, "[s]ince petitioner's liability to pay this total depends on the validity of each of his three convictions, the sentences are not concurrent."  *Id*.  Thus, *Ray* establishes that, when a court orders a defendant to pay a special assessment for each of several counts of conviction, the sentences are not concurrent and the "concurrent sentence" doctrine cannot be used to avoid appellate review of each count of conviction.  The applicability of the concurrent sentence doctrine on direct appeal is, however, distinct from the question presented here, on collateral review under section 2255.  *Ray* simply does not advance Ross's argument because it does not address the meaning of "custody."

In *Ball*, the Supreme Court held that duplicative convictions cannot stand even if the sentences are concurrent because "[t]he separate *conviction*, apart from the concurrent sentence, has potential adverse collateral consequences that may not be ignored."  470 U.S. at 865 (emphasis in original).

15

Such "adverse collateral consequences" included a potential delay in the defendant's eligibility for parole, an increased sentence under a recidivist statute for a future offense, the use of the additional conviction to impeach the defendant's credibility, and the societal stigma accompanying any criminal conviction. *Id.* Again though, *Ball* involved a direct appeal, not a habeas corpus petition under section 2255, and its discussion of the harm stemming from the collateral consequences of a felony conviction sheds no light on whether or not a monetary fine like a special assessment is the type of restriction on liberty that constitutes "custody" within the meaning of that statutory provision.

Because we believe the burden of a special assessment – even one imposed in conjunction with a wrongful conviction – does not amount to "custody," Ross is not "claiming the right to be released" from "custody" and his special assessment cannot serve as the basis for a claim under section 2255.

## 2.   COLLATERAL CONSEQUENCES

The parties dispute whether a petition premised on the collateral consequences of an unlawful conviction, such as those identified in *Ball*, is cognizable under section 2255. Our own law does not answer the question, but we are not without guidance. In *Maleng v. Cook*, 490 U.S. 488, 492 (1989) (per curiam), the Supreme Court held that, once a sentence for a conviction has completely expired, the collateral consequence of future sentencing enhancements potentially caused by that conviction is not itself sufficient to render an individual "in custody" for the purpose of a habeas attack. Of course, the sentence for Ross's conviction under

16

section 922(o) has not completely expired, but it is running concurrently with several other sentences. This case thus seems analogous to *Maleng*, since Ross's only additional harm stemming from the 922(o) conviction is whatever undefined collateral consequences may arise, not the term of imprisonment. In the end, however, we do not have to decide whether, on these facts, the collateral consequences of a wrongful conviction amount to "custody" under section 2255, because Ross has not identified any such potential consequences.

Though pressed at oral argument, Ross could not point to a collateral consequence not already existing as a result of his prior felony convictions or his seven other felony convictions in this case. He says that, as a result of his wrongful conviction under section 922(o), he is subject to greater social stigma, his credibility could be attacked more easily at a future hearing or trial, he may be barred from obtaining the benefit of future changes to the law, or his eligibility for parole or the length of a future sentence could be affected if he is convicted of some future crime. But, given his remarkably long rap sheet, which chronicles a lifetime of drug-related offenses and violent crimes, coupled with his seven other convictions in this case – including one unquestionably valid conviction for machinegun possession, namely count 7 – it is hard to see any significant collateral consequence originating from his conviction under section 922(o), let alone one that rises to the level of "custody." Indeed, most of the "collateral consequences" that he identifies are supported by nothing more than speculation, which is insufficient to establish "custody."

Relying on *Spencer v. Kemna*, 523 U.S. 1 (1998), and a handful of cases that closely hew to it, Ross asserts that "[a] presumption of collateral consequences exists whenever a criminal defendant challenges his criminal conviction." (Opening Br. at 22 (internal quotation marks omitted).) He is incorrect. *Spencer* did not hold that courts are to presume the existence of collateral consequences in all cases where a habeas petitioner challenges his conviction. Instead, *Spencer* noted only that the Supreme Court has been "willing to presume that a wrongful criminal conviction has continuing collateral consequences (or, what is effectively the same, to count collateral consequences that are remote and unlikely to occur)," 523 U.S. at 8, in order "to avoid mootness in challenges to conviction," *id*. at 10. Ross provides no reason why such a presumption should apply in a case like this, where mootness is not at issue. But even if we were to indulge in that presumption, it would be rebutted here for the reasons we have already noted: Ross's lengthy criminal history, his multiple convictions in this case, and his concurrent sentences all undermine his claim that somehow his additional conviction will harm him in particular.

In the absence of any plausible evidence of collateral consequences stemming from Ross's section 922(o) conviction, there is no basis to conclude that such consequences render him "in custody" and eligible for relief under section 2255.

## III.   CONCLUSION

For the reasons set forth above, we will vacate the District Court's order denying relief and direct that Ross's section 2255 motion be dismissed.

18