**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 21-1421 and 21-1422
_____

UNITED STATES OF AMERICA

v.

JUDY HAISTEN,
                    Appellant in No. 21-1421

DAVID HAISTEN,
                    Appellant in No. 21-1422
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Nos. 2-16-cr-0461-001 and 2-16-cr-0461-002)
District Judge:  Honorable Gerald J. Pappert
_____

Argued
June 28, 2022

Before:   JORDAN, PORTER, and PHIPPS, *Circuit Judges*

(Filed October 5, 2022)
_____

Peter G. Erdely   [ARGUED]
Law Offices of Peter G. Erdely
100 South Juniper Street – 3rd Fl.
Philadelphia, PA   19107
        *Counsel for Appellants*

Christopher E. Parisi
Robert A. Zauzmer   [ARGUED]
Office of United States Attorney
615 Chestnut Street – Ste. 1250
Philadelphia, PA   19106
        *Counsel for Appellee*

_____

OPINION OF THE COURT
_____

JORDAN, *Circuit Judge*.

Judy and David Haisten appeal the District Court's order denying their joint motion for post-conviction relief under 28 U.S.C. § 2255. They claim that their convictions should be vacated because their trial counsel was ineffective for failing to request a jury instruction on improper venue or judgment of acquittal on venue grounds. We will vacate the District Court's order and remand for the Court to conduct an evidentiary hearing on whether their counsel had a strategic reason for not raising a defense based on improper venue.

## I.   BACKGROUND

In 2009, the Haistens started an internet business out of their home in South Carolina. They sold discounted animal pesticides and drugs through their own company's website and other websites, including eBay. They did not, however, register their business with the Environmental Protection Agency or use EPA-approved labeling and packaging materials, in violation of EPA regulations governing manufacturers, importers, and distributors of animal pesticides. They similarly violated Food and Drug Administration regulations by dispensing certain drugs without a prescription, as well as by failing to register their business facilities with the FDA and use FDA-approved labeling and packing.

In a truly unusual pairing of business lines, the Haistens also used their online business to sell counterfeit DVDs of movies and television shows. They ordered the DVDs from suppliers in mainland China and Hong Kong, who would then ship them to the Haistens' home in South Carolina, using invoices and customs declarations that misrepresented the contents of the shipments.

The Haistens received cease-and-desist letters from South Carolina state regulators and two animal pesticides companies, all of which they ignored. After receiving multiple customer complaints about the Haistens' sales of counterfeit goods, eBay shut down their seller accounts. The Haistens, nevertheless, created new accounts and continued to sell the animal pesticides, drugs, and counterfeit DVDs.

By 2012, the U.S. Department of Homeland Security opened a criminal investigation into the Haistens' business dealings. DHS agents began making undercover purchases from the Haistens' business, particularly of animal pesticides and drugs, and Customs and Border Protection (CBP) officers seized shipments of counterfeit DVDs destined for the Haistens' home in South Carolina. Federal investigators then executed a warrant and searched the Haistens' home, which revealed unapproved animal pesticides and drugs, counterfeit DVDs, business records, and various cease-and-desist letters and seizure notices.

In November 2016, a grand jury in the U.S. District Court for the Eastern District of Pennsylvania indicted the Haistens on fifteen counts, including conspiracy, distributing and selling unregistered pesticides, distributing and selling misbranded pesticides, introducing misbranded animal drugs into interstate commerce, and trafficking in counterfeit goods. Of importance for this appeal, Count 14 charged the Haistens with trafficking counterfeit DVDs. Those DVDs happened to have been seized by CBP officers in Cincinnati, Ohio, before they reached the Haistens' South Carolina home. Count 15 also charged them with trafficking counterfeit DVDs, in this instance DVDs that were seized at their home.

About a year later, the Haistens were convicted on fourteen charges, including Counts 14 and 15.[1] David was

---

[1] At the close of the government's case, the government moved to dismiss Count 13, which charged the Haistens with trafficking in counterfeit goods. The reason for the dismissal of this count is not reflected in the trial transcript or clarified by the parties.

sentenced to 12 months' imprisonment on each of the first twelve counts and 78 months' imprisonment on each of Counts 14 and 15, all to run concurrently, producing a total sentence of 78 months. Judy was sentenced to 12 months' imprisonment on each of the first twelve counts, and 60 months' imprisonment on each of Counts 14 and 15, all to run concurrently, producing a total sentence of 60 months. The Haistens' trial counsel did not request a jury instruction on improper venue or move for acquittal on Counts 14 or 15 for lack of proper venue in the Eastern District of Pennsylvania.

The Haistens appealed, challenging an evidentiary ruling and a statement the government made during its summation. We affirmed. *United States v. Haisten*, 790 F. App'x 374, 376 (3d Cir. 2019). They filed numerous pro se motions in the District Court, all of which were denied. They also filed pro se notices of appeal, which their subsequently retained counsel moved to dismiss.

The Haistens timely filed a joint pro se motion for relief under 28 U.S.C. § 2255, arguing that their trial counsel had been ineffective for, among other things, failing to challenge venue on Counts 14 and 15. The District Court denied their motion. With respect to their venue argument, it held that any attempt by trial counsel to challenge venue would have been futile because the government had proved venue for Counts 14 and 15. The Court based its conclusion on a spreadsheet offered by the government that showed five shipments of DVDs were sent to customers in the Eastern District of Pennsylvania.

The Haistens then turned to us for a certificate of appealability. We granted it, limited to the issue of whether

the District Court erred in denying the Haistens' § 2255 motion with respect to their claims that trial counsel was ineffective for failing to request a jury instruction on improper venue for Counts 14 and 15, or for failing to move for a judgment of acquittal on those counts on the basis that venue had not been proven.

## II.   DISCUSSION[2]

Both parties now agree that, because the seized DVDs at issue in Counts 14 and 15 were not actually involved in sales to customers in the Eastern District of Pennsylvania, the District Court erred in concluding that venue had been established for those counts.  *See* U.S. Const. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right [to trial] by an impartial jury *of the state and district wherein the crime shall have been committed*[.]" (emphasis added)).  The government concedes that "trial counsel would have prevailed on a motion for a judgment of acquittal on the basis of improper venue" and that "the jury would have found that the government failed to prove there was venue on these counts had it been instructed on this issue."  (Answering Br. at 26.)

Despite those concessions, the government still contends that the Haistens' trial counsel did not perform deficiently by failing to object to improper venue and that, even

---

[2] The District Court had jurisdiction under 28 U.S.C. § 2255.  We have jurisdiction pursuant to 28 U.S.C. §§ 1291 and 2253(c).  "We review the District Court's denial of an evidentiary hearing in a *habeas* case for abuse of discretion." *United States v. Booth*, 432 F.3d 542, 545 (3d Cir. 2005).

if his performance was deficient, the failure to object did not prejudice the Haistens' defense. Rather, the government argues, trial counsel may have chosen not to pursue an improper venue argument on Counts 14 and 15 because doing so would have exposed the Haistens to trials in two districts, the sentencing ranges would have been the same regardless of convictions on Counts 14 and 15, and a jury instruction on venue would not have aided their defense. The government further asserts that defense counsel's questioning of one witness about the venue issue demonstrated counsel's awareness of it, suggesting that the choice not to pursue a venue challenge was purposeful.

We are unpersuaded. While a wide berth is given to the strategic decisions of counsel and their professional judgment, the record here is devoid of any explanation for trial counsel's failure to object to improper venue on Counts 14 and 15. Under 28 U.S.C. § 2255(b), "[u]nless the motion and files and records of the case conclusively show that the prisoner is entitled to no relief, the court *shall* … grant a prompt hearing thereon[.]" (emphasis added). The District Court's failure to hold such a hearing in this case – a decision likely influenced by its error in finding that venue for Counts 14 and 15 was established – was thus problematic.

The Haistens' ineffective-assistance-of-counsel claim is subject to the familiar two-prong test in *Strickland v. Washington*, 466 U.S. 668, 687 (1984): they must show, first, "that counsel's performance was deficient" and, second, "that the deficient performance prejudiced the defense." Counsel's performance is not deficient under *Strickland* if it is the product of a strategic litigation choice. *Gaines v. Superintendent Benner Twp. SCI*, 33 F.4th 705, 712 (3d Cir. 2022). But, for

7

*Strickland* claims, too, "a district court must hold a hearing '[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief.'" *United States v. Arrington*, 13 F.4th 331, 334 (3d Cir. 2021) (alteration in original) (quoting 28 U.S.C. § 2255(b)), *cert. denied*, 142 S. Ct. 1431 (2022). "If … a claim, when taken as true and evaluated in light of the existing record, states a colorable claim for relief under *Strickland*, then further factual development in the form of a hearing is required." *Id.*

"[*C*]*olorable* legal merit is distinct from *actual* merit." *Id.* The threshold for a habeas petitioner's claim to be colorable is low. Again, we have emphasized that a hearing must be held if the claim "does not *conclusively* fail either prong of the *Strickland* test[.]" *Id.* The bottom line is, given the lack of evidence in the record about trial counsel's strategic reasons for failing to object to improper venue on Counts 14 and 15, it is inconclusive whether the Haistens' trial counsel performed deficiently. And while we take no definitive position on the merits of the Haistens' arguments on the prejudice prong, their theory that they are prejudiced by having additional, improperly imposed felony convictions on their record is not so conclusively meritless as to have justified denying them a hearing.

Our dissenting colleague disagrees with us on that last conclusion, and his contrary belief is premised on two points: first, that it is mere speculation that the Haistens would spend less time in prison if they were resentenced without the two additional felony counts being on their record, and, second, that their allegations do not even implicate the idea of being "in custody," so there is nothing really at stake here. Neither

of those arguments is sufficient to make the Haistens' allegation of prejudice less than colorable.

As to the first point, looking into the future necessarily involves uncertainty, and, though the dissent dismisses the possibility of shorter sentences as mere speculation, it is at least as speculative to assert that the sentences the Haistens would receive at a resentencing would be the same as the ones they received when they were being sentenced for two additional felonies. The sentencing court is entitled to know what the record of convictions is before assessing what sentence to impose. That's true whether the sentence ultimately imposed is inside or outside of the guidelines range.[3] Indeed, a sentencing court has to know what the actual convictions and other considerations are so that it can sensibly arrive at and explain its decision. *See United States v. Langford*, 516 F.3d 205, 213 (3d Cir. 2008) (describing duty of district court to explain its sentencing decision, especially if it chooses to go outside the guidelines). The changed record may end up making no difference to the District Court, if there ever is a resentencing (and a resentencing is by no means certain, since the Haistens may not get past the "performance" prong of the *Strickland* test). Still, it may make a difference, and that is for the District Court to decide, not for us to assume.[4]

---

[3] The Haistens received sentences below their guidelines ranges. Those ranges were 121 to 151 months for David, and 108 to 135 months for Judy. David actually received 78 months, and Judy received 60.

[4] The dissent's reliance on *Rainey v. Varner*, 603 F.3d 189 (3d Cir. 2010), is misplaced. True enough, we concluded

As to the second point – that the Haistens' ineffectiveness claim doesn't implicate the issue of "custody" at all and so is irrelevant – that too is mistaken. It takes as given what it purports to prove, namely that there's no prejudice because the sentence will be the same and there will be no impact on how long they'll be in custody. But, as just discussed, that is not so. Even if it were, however, the conclusion would still be wrong because "custody" is not the determinative factor; "prejudice" is, and the two terms are not synonymous. Nothing in our jurisprudence suggests that being in custody is a prerequisite to showing prejudice. On the contrary, collateral consequences can and do count when considering the question of prejudice. *Cf. Ball v. United States*, 470 U.S. 856, 865 (1985) (deciding on direct appeal that an increased sentence under a recidivist statute for a future offense or delay in eligibility for parole constituted potential adverse collateral consequences of an unauthorized conviction).

---

that prejudice could not be shown in that case because the petitioner would have received the same sentence regardless of the ineffectiveness of counsel, *id*. at 202-03, but we have declined to apply *Rainey* outside of its specific context: an ineffective-assistance claim involving a mandatory life sentence for second-degree felony murder. *Bennett v. Superintendent Graterford SCI*, 886 F.3d 268, 289-90 (3d Cir. 2018); *see also id.* at 290 n.19 ("*Rainey* [was] a narrow decision that certainly did not purport to redefine prejudice globally by adding a requirement of a more onerous sentence for all petitioners alleging guilt-phase ineffectiveness.") (internal quotation marks omitted).

Our dissenting colleague thinks otherwise and cites *United States v. Ross*, 801 F.3d 374 (3d Cir. 2015), for the proposition that "section 2255 provides relief only to those prisoners who claim the right to be released from 'custody.'" *Id.* at 379. *Ross*, however, said a good deal more than that. We were at pains there to declare that "[t]he term 'custody' … is not as straightforward as it may at first appear[,]" and that, as the Supreme Court has explained, the concept of "custody" is "expansive enough to encompass harms and remedies other than immediate discharge from physical confinement[.]" *Id.* (citing *Peyton v. Rowe*, 391 U.S. 54, 66-67 (1968)). In short, "'our understanding of custody has broadened' to include many forms of restraint short of physical confinement[.]" *Id.* (quoting *Rumsfeld v. Padilla*, 542 U.S. 426, 437 (2004)).

Our dissenting colleague also asserts that we are unduly broadening the standard for obtaining an evidentiary hearing under § 2255. He cites *Maleng v. Cook*, 490 U.S. 488, 492 (1989) (per curiam), in which the Supreme Court held that, for purposes of § 2245, a petitioner who had served his sentence on one conviction was no longer "in custody" for that conviction, even though that sentence had been used to enhance the sentence he received for a subsequent crime. (Dissent at 3-4.) The Court observed that, because the petitioner had served his time for the conviction he was trying to collaterally attack, § 2255 was no longer available to him as a vehicle to contest that fully satisfied conviction. *Maleng*, 490 U.S. at 492-93. *Maleng*, however, has no pertinence here, and the dissent's focus on "custody" continues to confuse rather than clarify the issue before us. Unlike the petitioner in *Maleng*, the Haistens in fact are in custody right now, serving sentences based on the convictions they are attacking. Their ability to exercise their right to file for relief under § 2255 as

11

current federal prisoners has never been at issue. Because they are in prison based, in part, on convictions that even the government acknowledges cannot stand, there is nothing in the least out of the ordinary in their using § 2255 as the procedural means to attack those convictions.

That brings us back to what actually is significant at this stage of the proceeding: the Haistens are in custody and must assert a colorable claim under *Strickland* to obtain an evidentiary hearing under § 2255. Whereas in *Ross*, a special assessment of $100 was not enough of a restraint on liberty to render the petitioner in custody and warrant relief under § 2255, 801 F.3d at 379-80, it may well be that two wrongful felony convictions are enough of a collateral consequence to be a restraint on liberty, especially since they carry with them the prospect of enhanced penalties, should the Haistens commit similar crimes in the future. Nevermind that, says the dissent; "[f]or those enhanced penalties to have a plausible effect on the Haistens, they would have to commit another counterfeiting crime[,]" and we should assume they will instead be law abiding. (Dissent at 2-3.) Yet enhanced penalties are provided precisely because recidivism is real, the assumption being that people do stray again if not facing severe consequences. It is not a disservice to a criminal defendant's good intentions to recognize that the prospect of an extra helping of punishment upon a re-offense is a real-world consequence of his present conviction. He may plan to be law-abiding, but the threat of enhanced penalties makes even an unfounded accusation of a re-offense a sword of Damocles. That reality deserves better than a rhetorical shrug. At the least, it gives rise to a colorable claim that having wrongful felony convictions results in cognizable prejudice, and that is all that matters at this stage for the Haistens.

12

Accordingly, the Haistens have a colorable claim of ineffective assistance of counsel, and the District Court abused its discretion in failing to hold an evidentiary hearing before denying their claim.

**III.    CONCLUSION**

For the foregoing reasons, we will vacate the District Court's order denying the Haistens' § 2255 motion and will remand to the District Court for an evidentiary hearing on whether the Haistens' trial counsel had a strategic reason for not objecting to improper venue on Counts 14 and 15.

*United States v. Haisten*, Nos. 21-1421 & 21-1422
PHIPPS, *Circuit Judge*, dissenting.

The Majority Opinion remands this case for an evidentiary hearing on the Haistens' motion for postconviction relief pursuant to 28 U.S.C. § 2255. But such a hearing is warranted only if, after taking as true all non-frivolous factual claims alleged in the petition, a person in custody plausibly states a claim that his or her sentence was imposed in violation of federal law. *See United States v. Arrington*, 13 F.4th 331, 334 (3d Cir. 2021); *see also* 28 U.S.C. § 2255(b) (providing for an evidentiary hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief"). Applied to the claim for ineffective assistance of counsel raised here, the Haistens must plausibly allege a deficiency in their counsel's performance *and* resulting prejudice. *See Arrington*, 13 F.4th at 334 (explaining that if a § 2255 motion "clearly fails to demonstrate either deficiency of counsel's performance or prejudice to the defendant, then the claim does not merit a hearing" (quoting *United States v. Dawson*, 857 F.2d 923, 928 (3d Cir. 1988))); *see generally Strickland v. Washington*, 466 U.S. 668 (1984). The Majority Opinion correctly concludes that the Haistens plausibly alleged deficient performance. But they did not present similarly plausible allegations of prejudice, so their § 2255 motion fails as a matter of law. For that reason, the District Court's denial of their motion without an evidentiary hearing should be affirmed, and on that ground, I respectfully dissent.

No one here contests the plausibility of the allegation that if the Haistens' trial counsel would have moved for acquittal due to improper venue, then the Haistens would have been acquitted on the two counterfeiting charges (Counts 14 and

15). In this context, however, that alone does not suffice for prejudice. Even without convictions for those counts, the Haistens would have been subject to the same Guidelines ranges: 121 to 151 months for David, and 108 to 135 months for Judy. Because those counterfeiting convictions did not alter their Guidelines ranges, it is conjecture to conclude that the Haistens would have received a lighter sentence without them. And with nothing more than speculation in support of the prejudice prong, the Haistens are not entitled to an evidentiary hearing. *Cf. Rainey v. Varner*, 603 F.3d 189, 202–03 (3d Cir. 2010) (rejecting a claim for ineffective assistance of counsel, because "even had [the petitioner's] counsel challenged the sufficiency of the evidence, [the petitioner] would have received the same sentence"); *United States v. Rangel*, 781 F.3d 736, 744–45 (4th Cir. 2015) (rejecting a claim for ineffective assistance of counsel based on trial counsel's failure to request a jury instruction when the petitioner's "sentence would have been the same even with a proper jury instruction"). In reaching a different conclusion, the Majority Opinion neglects that the movant, here the Haistens, must plausibly allege that they would have received a lighter sentence; the government does not have to prove that the sentence would have been the same. *See Arrington*, 13 F.4th at 334–35. Without non-speculative allegations of a lighter sentence, the Haistens are not entitled to an evidentiary hearing.

Nor is the Haistens' § 2255 motion the proper method for challenging the downstream collateral consequences of their counterfeiting convictions. Such a motion may be used to litigate ineffective-assistance-of-counsel claims, and the standard for the motion – not the standard for the underlying claim – is that the violation of federal law must result in a

2

"severe" restraint on individual liberty that is "immediate" and "not speculative." *Duka v. United States*, 27 F.4th 189, 195 (3d Cir. 2022) (quoting *United States v. Ross*, 801 F.3d 374, 379 (3d Cir. 2015)). And here, although their counterfeiting convictions would subject the Haistens to an increased maximum prison sentence for any subsequent counterfeiting offenses, *see* 18 U.S.C. § 2320(b)(1)(B), that possibility does not immediately restrain their liberty. For those enhanced penalties to have a plausible effect on the Haistens, they would have to commit another counterfeiting crime. Yet their motion provides no basis for supposing their recidivism. *Cf. O'Shea v. Littleton*, 414 U.S. 488, 497 (1974) (explaining that courts generally assume that persons "will conduct their activities within the law and so avoid prosecution and conviction"). And therefore, the downstream collateral consequences of their two counterfeiting convictions do not implicate their custody to the degree required for challenging a sentence through a § 2255 motion. *See Ross*, 801 F.3d at 379 ("The plain text of section 2255 provides relief only to those prisoners who claim the right to be released from 'custody.'").

The Majority Opinion recognizes the *possibility* that the Haistens may re-offend, but § 2255 requires *plausible* allegations of immediate and non-speculative restraints on liberty. *See id.* Yet the Haistens, who both received below-Guidelines sentences, offer nothing to suggest that they would pose an immediate risk of recidivism upon their release. By ignoring the requirement that a restraint on individual liberty be immediate and non-speculative, the Majority Opinion essentially applies a blanket rule: because any conviction may influence the sentencing for a future crime, a claim of wrongful conviction will always plausibly allege the prejudice needed for an evidentiary hearing. The legal standard to obtain a

3

§ 2255 hearing, however, is not that sweeping. *Cf. Maleng v. Cook*, 490 U.S. 488, 492 (1989) (per curiam) (concluding that a habeas petitioner was not in custody following the expiration of his prison sentence "merely because of the possibility that the prior conviction will be used to enhance the sentences imposed for any subsequent crimes of which he is convicted").

In sum, I view the record as sufficient to affirm the District Court's denial of the Haistens' § 2255 motion.

4