**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 24-1149, 25-2881
_____

UNITED STATES OF AMERICA

v.

DERON NIXON,
Appellant

_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 2:11-cr-00045-017)
U.S. District Judge:  Honorable Arthur J. Schwab
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
May 11, 2026
_____

Before: SHWARTZ, MASCOTT, and McKEE, <u>Circuit Judges</u>

(Filed: May 13, 2026)
_____

OPINION[*]
_____

---

[*] This disposition is not an opinion of the full court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

SHWARTZ, Circuit Judge.

Deron Nixon appeals the order revoking his supervised release ("revocation order").  Because his appeal is moot, we will dismiss.

I

Nixon pled guilty to conspiracy to distribute heroin under 21 U.S.C. § 846.  As a result of the Sentencing Guidelines offense level and criminal history, which included vehicle violations as well as drug and assault convictions, he was sentenced to 170 months' imprisonment followed by eight years' supervised release, and his term of incarceration was later reduced to 133 months' imprisonment due to a retroactive change to the Guidelines. His conditions of supervised release prohibited him from, among other things, possessing a firearm and committing other crimes.  While on supervised release, Nixon was charged with assaulting the mother of his daughter with a firearm.[1]  As a result, a warrant was issued alleging that he violated various conditions of supervised release.[2]

The District Court held a revocation hearing where the Government proceeded on only the alleged assault of the mother of Nixon's child and his possession of a firearm. The District Court considered the testimony of a responding police officer as well as

---

[1] According to the victim, Nixon strangled her and struck her with a firearm before fleeing.  The state case was dismissed after the victim failed to appear for court proceedings and failed to respond to law enforcement outreach.

[2] Several months later, Nixon was apprehended following a vehicle stop in which he ignored a stop sign, fled from officers, and refused a blood test after they suspected he had been driving while intoxicated.  Nixon pled guilty in Pennsylvania state court to resisting arrest and driving with a suspended license.

body-worn camera footage, found that Nixon had violated the terms of his supervised release, and sentenced him to forty-two months' imprisonment without any further supervision. Nixon has since been released.

Nixon appeals the revocation order, contending that, despite his release, the order is causing him redressable harms.

## II[3]

As an initial matter, we must satisfy ourselves that we have jurisdiction. "Article III of the Constitution limits the 'judicial Power' to 'Cases' or 'Controversies.'" Patel v. United States, 156 F.4th 342, 347 (3d Cir. 2025) (quoting U.S. Const. art. III, § 2). "For a case or controversy to exist, a petitioner, throughout each stage of the litigation, must have suffered, or be threatened with, an actual injury traceable to the [respondent] and likely to be redressed by a favorable judicial decision." Id. (quoting Abreu v. Superintendent Smithfield SCI, 971 F.3d 403, 406 (3d Cir. 2020)).

Here, Nixon has been "unconditionally released from custody," so, to have a live controversy, he must show that he "will, in fact, suffer collateral consequences from the supervised release revocation." United States v. Huff, 703 F.3d 609, 612 (3d Cir. 2013). This requires that he identify a "concrete and continuing injury" resulting from the revocation. Spencer v. Kemna, 523 U.S. 1, 7 (1998). This injury cannot be the product of "speculation," id. at 16, and "[i]t is not enough if 'collateral consequences' . . . amount

---

[3] "Questions of mootness are considered under a plenary standard of review." Int'l Bhd. of Boilermakers, Iron Ship Builders, Blacksmiths, Forgers & Helpers v. Kelly, 815 F.2d 912, 914 (3d Cir. 1987).

3

to 'a possibility rather than a certainty or even a probability,'" Abreu, 971 F.3d at 406 (quoting Burkey v. Marberry, 556 F.3d 142, 148 (3d Cir. 2009)). Moreover, he must show a "'likelihood' that a favorable decision would redress the injury or wrong." Burkey, 556 F.3d at 148. Thus, a defendant's claim is not moot even if he has completed his term of supervised release, but the court can redress his non-speculative injury. See, e.g., Patel, 156 F.4th at 348 (determining defendant's claim was not moot because vacatur of her conviction would allow her to reopen a civil judgment predicated on the collateral estoppel consequences of her challenged guilty plea).

A claim is moot, however, if the order challenged is one of only several reasons for a defendant's alleged injury. Put differently, if the injury is caused by the order as well as other circumstances, then vacating that order would be unlikely to redress that injury, so the case is moot. See Spencer, 523 U.S. at 14 (concluding defendant's argument that parole revocation "could be used to his detriment in a future parole proceeding" did not defeat mootness because parole boards operated with discretion and would consider the revocation of parole as one of many factors in later proceedings); Burkey, 556 F.3d at 149 (rejecting defendant's claim that the denial of his early release from prison constituted a collateral consequence where it purportedly prevented another district court from reducing a term of supervised release because reducing that term was "discretionary" and involved "many factors"); see also United States v. Ross, 801 F.3d 374, 382-83 (3d Cir. 2015) (holding a defendant's attempt to vacate a conviction was moot where he claimed that conviction could be used against him in future criminal proceedings because he already had a "lengthy criminal history" and "multiple

4

convictions" in the case at issue).

Nixon argues revocation of his supervised release caused two collateral consequences that provide us with jurisdiction: (1) a limitation on his ability to receive certain credentials associated with a commercial driver's license, namely a Hazardous Materials Endorsement ("HME"), and (2) an obstacle to gaining partial custody of his daughter.  Neither is adequately concrete or redressable.

Nixon's affidavit stating that he faces "possible" injuries is insufficient.  Among other things, Nixon has yet to begin training to receive a basic commercial driver's license[4] and has stated only that he "hop[es] to" seek custody of his daughter, but has not filed a custody petition.[5]  Spencer, 523 U.S. at 14 (declining to recognize an injury that was just "a possibility rather than a certainty or even a probability"); cf. Lujan v. Defs. of Wildlife, 504 U.S. 555, 564 (1992) ("'[S]ome day' intentions—without any description of concrete plans, or indeed even any specification of when the some day will be—do not support a finding of the 'actual or imminent' injury that our cases require.").

Moreover, we cannot say that vacating the revocation order would likely redress his alleged injuries.  First, the Transportation Security Administration ("TSA")—the

---

[4] Obtaining a license would also require Nixon to meet other qualifications that he might not satisfy, rendering his alleged injury even more speculative.  See 49 C.F.R. § 383.51(b) (listing criminal offenses that limit ability to obtain a commercial driver's license).

[5] See Beltran v. Strachota, No. 13-C-1101, 2014 WL 4924668, at *3 (E.D. Wis. Sep. 30, 2014) (concluding defendant's "suggestion[] that she may be a party to future custody proceedings regarding her child is speculative and is not enough to constitute a case or controversy").

entity responsible for awarding HMEs[6]—may determine Nixon is ineligible for the endorsement "if the search conducted . . . reveals extensive . . . domestic criminal convictions, . . . or a period of . . . domestic imprisonment that exceeds 365 consecutive days." 49 C.F.R. § 1572.107(b); 49 C.F.R. § 383.71(b)(8) (requiring drivers seeking "hazardous materials endorsements" to comply with Part 1572). Thus, vacating the revocation order would not change other facts that may impact the TSA's decision, such as Nixon's lengthy history of criminal convictions, including several vehicle offenses and a drug conviction that resulted in 133 months' imprisonment as well as his recent apprehension following his flight from the police, his refusal to provide a blood draw, and his guilty plea to resisting arrest and driving with a suspended license. See Ross, 801 F.3d at 383 (recognizing defendant's "lengthy criminal history" and "multiple convictions" rendered it unlikely that one additional conviction posed harm sufficient to constitute a collateral consequence).

Similarly, a Pennsylvania family court would consult numerous factors in considering whether Nixon is entitled to custody of his daughter. See 23 Pa. Cons. Stat. Ann. § 5328(a) (enumerating range of considerations and entitling court to consider "[a]ny other relevant factor"). Pennsylvania law requires courts to give "substantial weighted consideration" to factors "which affect the safety of the child," including "[w]hich party is more likely to ensure the safety of the child . . . past abuse committed by a party . . . [and] [v]iolent or assaultive behavior committed by a party." Id. Again,

---

[6] Transportation Security Administration, HAZMAT Endorsement, https://www.tsa.gov/for-industry/hazmat-endorsement (last visited Mar. 19, 2026).

6

even if we vacated the revocation order, the state court would still consider Nixon's extensive criminal history, including the fact that he was charged with assaulting the mother of their child.  See Spencer, 523 U.S. at 16 (rejecting the revocation of parole as a collateral consequence where it could be detrimentally used against defendant in future criminal proceedings because future courts would rely on "conduct underlying the revocation, rather than the revocation itself").

Thus, Nixon has failed to identify non-speculative consequences of the revocation order that we can redress.

III

For the foregoing reasons, we will dismiss Nixon's appeal as moot.